DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol Street, Ste. 650
Costa Mesa, CA  92626
Telephone:  (949) 614-5830
Facsimile:   (949) 271-4190
aashish@desai-law.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

CHARLES W. COOLEY, GRADY
ANDERSON, NICHOLAS MARONE on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

INDIAN RIVER TRANSPORT CO., a
Florida Corporation, and DOES 1-10,
inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:18-CV-00491-WBS-
BAM

Judge:  William B. Shubb

**MEMORANDUM OF POINTS
AND AUTHORITY IN
SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL
OF CLASS ACTION
SETTLEMENT**

**HEARING SCHEDULE**

DATE:    January 14, 2019
TIME:    1:30 p.m.
CTRM.:  5, 14th Floor
JUDGE:  William B. Shubb

# TABLE OF CONTENTS

I.    INTRODUCTION.............................................................................................6

II.   PROCEDURAL HISTORY ...........................................................................7

      A. The Parties Battled with Motions .........................................................8

III.  SETTLEMENT NEGOTIATIONS.................................................................8

IV.   TERMS OF SETTLEMENT...........................................................................9

      A. Settlement Sums and Additional Consideration ..................................9

      B. Monetary Relief to Class Members .....................................................10

      C. Release of All Claims Against the Settling Defendants ....................10

      D. Attorneys' Fees and Costs ..................................................................10

      E. Class Representative Service Payments..............................................11

V.    LEGAL ARGUMENT ...................................................................................13

      A. Class Action Settlement Procedure ....................................................13

      B. Standards for Preliminary Settlement Approval.................................14

      C. Settlement is the Product of Informed, Non-Collusive
         Negotiation ...........................................................................................14

      D. The Proposed Settlement is Within the Range of
         Reasonableness.....................................................................................15

      E. Class Counsel Are Entitled to Reasonable Fees ................................17

         1. Class Counsel Obtained Excellent Results for the Class
            In Light of the Burdens of the Litigation...................................19

         2. Class Counsel Assumed Significant Risks In Light of
            the Complexity of the Legal and Factual Issues in this Case ...............20

         3. Awards in Similar Cases Demonstrate That Class Counsel
            Seek a Reasonable Fee Award ....................................................20

         4. Other Factors Support Approval of Class Counsels' Fee Request.......21

            i. Counsel's Skill and Experience..........................................21

            ii. A Partial Lodestar Cross-Check Alone
                Supports the Fee Request .................................................21

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.  Class Counsel Are Entitled to Reimbursement of Expenses
Under the Settlement Agreement ..............................................................22

VI.    PROPOSED PLAN OF NOTICE ...................................................................23

VII.  PROPOSED PLAN OF ALLOCATION..........................................................24

VIII. THE COURT SHOULD SET A FINAL APPROVAL
HEARING SCHEDULE ..................................................................................25

IX.    CONCLUSION ................................................................................................26

ii

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF AUTHORITIES

### CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591, 617 (1997)......................................................................................22

*Bautista v. Harvest Management Sub*,
  No. 2:12-cv-10004 (C.D. Cal. Oct. 16, 2013) (ECF No. 60)................................15

*Boeing Co. v. Van Gemert*,
  444 U.S. 472, 478 (1980)......................................................................................16

*Byrd v. Civil Serv. Comm'n*,
  459 U.S. 1217 (1983)............................................................................................13

*Ching v. Siemens Industry, Inc.*,
  No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) ........................................24

*Churchill Village, LLC v. General Elec.*,
  361 F.3d 566, 576 (9th Cir. 2004).........................................................................13

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448, 470-71 (2d Cir. 1974) ....................................................................19

*City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*,
  100 F.3d 1041, 1043 (1st Cir. 1996) .....................................................................14

*Craft v. County of San Bernardino*, 624 F. Supp.
  2d 1113, 1122 (C.D. Cal. 2008)............................................................................20

*Create-A-Card, Inc. v. Intuit, Inc.*, No. CV-07-6452 WHA,
  2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept. 22, 2009) ......................14

*Fischel v. Equitable Life Assur. Soc'y*,
  307 F.3d 997, 1006 (9th Cir. 2002)........................................................................17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1027 (9th Cir. 1998)......................................................................13

*Hernandez v. Kovacevich "5" Farms*,
  No. 04-cv-5515, 2005 U.S. Dist. LEXIS 48605,
  at *25-31 (E.D. Cal. September 30, 2005).............................................................20

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373, 1375 (N.D. Cal. 1989) ...........................................................20

*In re Citric Acid Antitrust Litig.*,
  145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ......................................................23

*In re Heritage Bond Litig.*,
  MDL 02-1475, 2005 U.S. Dist. LEXIS 13555,
  at *64-74 (C.D. Cal. June 10, 2005) ......................................................................20

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593,

at *3 (N.D. Cal. June 16, 1994) .............................................................................24

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373, 379 (9th Cir. 1995)..............................................................................20

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294, 306-07 (3d Cir. 2005) .......................................................................21

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS")..............................................16, 17

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) .................................................17

*Laffitte v. Robert Half Int. Inc.*,
1 Cal.5th 480 (2016) .........................................................................................10, 17

*Linney v. Cellular Alaska P'ship*,
No. 96-3008, 1997 U.S. Dist. LEXIS 24300,
*20 (N.D. Cal. Jul. 18, 1997) .................................................................................20

*Mangold v. Cal. Pub. Utils. Comm'n*,
67 P.3d 1470, 1479 (9th Cir. 1995)..........................................................................10

*Meijer v. Abbott Laboratories*,
No. 07-05985 (N.D. Cal. Aug. 11, 2011)................................................................19

*Mendoza v. United States*,
623 F.2d 1338, 1351 (9th Cir. 1980)........................................................................23

*Mitland Raleigh-Durham v. Myer*,
840 F. Supp. 235, 239 (S.D.N.Y.).............................................................................21

*Novartis Pharms.*,
No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 ..................11

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615, 625 (9th Cir. 1982)............................................................................13

*Paul, Johnson*, Alston & Hunt v. Graulty,
886 F.2d at 272, 268 (9th Cir. 1989)..................................................................19, 20

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
392 U.S. 134, 139 (1968)..........................................................................................16

*Pillsbury Co. v. Conboy*,
459 U.S. 248, 262-63 (1983)......................................................................................16

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185, 201 (S.D.N.Y. 1997)...................................................................11

*Scott v. Bimbo Bakeries USA*,
No. 2:10cv03154 (E.D. Pa. March 5, 2014) (ECF No. 174)..................................15

*Shook v. Indian River Transport, Co.*,

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Case No. 1:14-cv-01414-WBS-BAM (E.D. Cal) ...................................................7

*Staton v. Boeing Co.*,
327 F.3d 938, 977 (9th Cir. 2003).............................................................11

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273, 333 n.65 (3d Cir. 2011)......................................................10

*Tijero v. Aaron Brothers, Inc.*,
No. C 10-01089-SBA, 2013 WL 6700102
at *3 (N.D. Cal. Dec. 19, 2013) ................................................................15

*Vedachalam v. Tata Consultancy Servs. Ltd.*,
No. 06-0963, 2013 U.S. Dist. LEXIS 100796,
at *1-2 and 10 (N.D. Cal. July 18, 2013) ..................................................19

*Villegas v. J.P. Morgan Chase & Co.*,
CV 09-00261 SBA EMC, 2012 WL 5878390,
at *6 (N.D. Cal. Nov. 21, 2012) ................................................................13

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759, 769 (9th Cir. 1977).............................................................21

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043, 1048-50 (9th Cir. 2002) ...................17, 18, 19, 20, 21

RULES

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................22

Fed. R. Civ. P 23(e) ....................................................................................6

Fed. R. Civ. P 23(e)(1) ..............................................................................22

OTHER AUTHORITIES

Federal Aviation Administration Authorization Act of 1994 ("FAAAA") by the
*Denham Amendment* ................................................................................16

TREATISES

4 Newberg on Class Actions §§ 11.22, et seq. (5th ed. 2014)......................12, 14, 22

*The Manual for Complex Litigation* (Fourth) (2011) ................................................13

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**MEMORANDUM IN SUPPORT OF MOTION**

## I.    INTRODUCTION

Plaintiffs and Class Representatives Charles W. Cooley, Grady Anderson, and Nicholas Marone, respectfully request that the Court grant preliminary approval of the Settlement reached with Indian River Transport, Co. ("IRT" or "Defendant"), attached as Exhibit A to the Declaration of Aashish Y. Desai in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Desai Decl.").

After years of intense litigation, law and motion volleys regarding the proper venue for the case, the appropriate scope of discovery, and a full day of mediation and negotiation, this Settlement fully and finally resolves all of the claims asserted.

The major terms of the Settlement are as follows:

(1)    The Settlement creates an *all-cash* fund of $1,400,000 (the "Settlement Fund");

(2)    There is no reversion.  Any uncashed checks shall be tendered, in the name of Settlement Class Member, to the California State Controller's Office (SCO), Unclaimed Property Division under the procedures set forth by C.C.P. section 1300, *et seq*.;

(3)    The Class members *will not have to make a claim* to receive settlement payments.  Distributions will be made *directly* to each class member who does not timely opt out;

(4)    As a result of the Settlement, each Class Member will receive an average payment of approximately $374;

(5)    The three named Plaintiffs will seek enhancement awards of $10,000 each, for a total of $30,000.

(6)    Plaintiffs will also move the Court for an award for attorneys' fees of 33% of the Settlement Fund, approximately $462,000, which, given

1

the amount of time spent on this case, is *less* than counsel's *unadorned* lodestar of $899,848.00, plus up far to $27,326.55, in costs, both of which are itemized *and submitted* (at the preliminary approval stage) to the Court in support of the asserted lodestar and costs;

The Parties now seek preliminary approval of this comprehensive Settlement. The proposed notice provides Class members with the best notice practicable under the circumstances and will allow each Class member a full and fair opportunity to evaluate the Settlement and decide whether to opt-out or object to the Settlement. Defendant does not oppose this motion.

By this motion, Plaintiffs request that the Court: (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice; (3) appoint Rust Consulting as the Notice Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to object to, or opt out of, the Settlement; and (5) schedule a hearing pursuant to FRCP 23(e) to determine whether the proposed Settlement is fair, reasonable, adequate, and should be finally approved.

## II. <u>PROCEDURAL HISTORY</u>

This case was filed more than a year ago in May 2017 and has been hotly contested from the beginning. There is no doubt that the parties involved have devoted significant time and resources to litigating this case to the best of their ability -- and to ultimately settling it.

Plaintiffs are current and former truck drivers who work or worked for IRT in the State of California and were paid under a piece-rate. Plaintiffs filed a state court complaint in Orange County Superior Court alleging they were not advised or informed of their right to take meal and rest breaks, they were not separately paid for non-driving work and rest break, and were not issued accurate wage statements. The Complaint alleged claims under the California Labor Code and California's Unfair Competition Law ("UCL").

2

**A.    The Parties Battled with Motions**

Immediately after, IRT answered the Complaint and removed the action to the United State District Court for the Central District.  Defendant simultaneously filed a Notice of Related Case to relate this case to *Shook v. Indian River Transport, Co.*, Case No. 1:14-cv-01414-WBS-BAM (E.D. Cal) (the "Shook Action").

Meanwhile, the parties continued litigating the case and propounding discovery.  Despite reaching an impasse on discovery issues, Plaintiffs proceeded to file a Motion for Class Certification to try to move the case forward.  Shortly after, Defendant filed a Motion to Transfer the Case to the Eastern District and stay the class certification proceedings until its transfer motion was decided.  Plaintiffs vigorously opposed the Motion, but it was ultimately granted by the Court in March 2018.  Afterwards, this case was assigned to this Court.  Plaintiffs then amended the Complaint in June 2018 to add two Class Representatives.  When the parties held their first status conference with this Court, it was clear that the Defendant intended to file a dispositive motion, and Plaintiffs expressed their intention to doggedly pursue the vindication of their rights.  There is no doubt this case was litigated thoroughly and vigorously, and had the parties not reached a settlement, the parties would have continued to pour significant time and resources into the case.

## III.    <u>SETTLEMENT NEGOTIATIONS</u>

On September 6, 2018 Plaintiffs and IRT engaged in extensive mediated negotiations to resolve the dispute.  The Parties spent a full-day in mediation with Judge Gail Andler (Ret.) in Irvine.  The Parties exchanged detailed information regarding the putative class including their driving routes, fuel records from driving in various states, pay records, and the scope of the settlement.  This information is directly related to the total amount of damages and restitution available in this case.

After several hours of negotiations facilitated by Judge Andler, the parties were at a near impasse.  However, after several additional hours of negotiation with

Judge Andler's guidance and oversight, the parties were able to reach an agreement. That same day, the parties executed a Memorandum of Understanding to settle the entire case for $ 1.4 million.  (Desai, Exh. C.)  Plaintiffs and IRT exchanged several drafts of the final Settlement Agreement and related settlement documents before the parties came to final agreement.  (*Id.* ¶ 23.)

At all times during the negotiation process, counsel for Plaintiffs and the Defendant bargained vigorously and at arm's length on behalf of their clients. (*Id.* ¶ 33.)  All Class Representatives support this Settlement.

## IV.    <u>TERMS OF THE SETTLEMENT</u>

The Settlement resolves all claims of Plaintiffs and the Class against IRT. The details are contained in the attached Joint Stipulation of Class Action Settlement and Release. (Desai Decl., Exh. A ["Settlement Agreement"].)  The key terms of the Settlement are described below.

### A.    **Settlement Sums and Additional Consideration**

Defendant will pay $1,400,000 to resolve all claims.   This amount is inclusive of attorneys' fees and costs (if approved), the cost of administration, enhancement payments to the Class Representatives (if approved), and taxes attendant to distributions.  This is a "no reversion" settlement.  No money will go back to IRT.  Furthermore, the Class *will not have to make a claim* in order to receive distributions; distributions will be made *directly* to each class member who does not opt out of the class.  In other words, the Class will not have to jump through hoops or fill out unnecessary forms to benefit from this Settlement.  The money will flow *directly* to each truck driver.  This is the "gold standard" for class action settlements in employment wage and hour cases.  Upon Court approval, any unclaimed amount shall be tendered in the name of the Settlement Class Member to the California State Controller's Office (SCO), Unclaimed Property Division under the procedures set forth under C.C.P. Section. 1300, *et seq*.

4

### B.    Monetary Relief to Class Members

After deducting the Class Representatives Fees, Class Counsel's awarded attorneys' fees and costs, and the Claims Administrator's fees and expenses, the balance of the Maximum Settlement Amount (the "Net Settlement Proceeds") will be distributed as follows: (Settlement Agreement, ¶ 17.)

Defendant will calculate the number of full or partial workweeks worked in California by all Class members based on its payroll records. This number of full or partial workweeks shall be reduced by the number of workweeks attributable to those Class Members who have excluded themselves from the Settlement ("Total California Workweeks"). The Net Settlement Amount shall be divided by the Total California Workweeks to obtain the "Workweek Amount." "Individual Settlement Payments" shall be calculated by multiplying the Workweek Amount by the number of California Workweeks worked by an individual Settlement Class Member. The Settlement Administrator shall distribute the Individual Settlement Payments to all Settlement Class Members.

This formulation based on workweeks is appropriate because (1) it is consistent with how class members were paid, and (2) it is consistent with the way Plaintiffs calculated the statutory penalties.

### C.    Release of All Claims Against the Settling Defendants

In exchange for the IRT's monetary consideration, upon entry of a final judgment approving the proposed Settlement, Class Representatives and the Class will release IRT from all claims reasonably arising from the facts in the First Amended Complaint (Dkt. No. 55) including but not limited to wage and hour claims, claims for unpaid rest breaks, claims for unpaid wages for any work allegedly not encompassed by activity-based pay or delay pay or hourly based pay, alleged off-the-clock work including sleeper berth time, meal periods, rest periods, wage statement violations, record-keeping violations, and claims under the UCL, as

well as claims for penalties or premium pay.  (Settlement Agreement, ¶ 45.)

### D.    Attorneys' Fees and Costs

Class Counsel will move for attorneys' fees of 33% of the Settlement Fund (approximately $ 462,000), plus costs and expenses not to exceed $27,326.55. Because the Settlement successfully resolved California state law claims, the request must be based upon California state law.  *Mangold v. Cal. Pub. Utils. Comm'n*, 67 P.3d 1470, 1479 (9th Cir. 1995) (affirming that state law applies in determining not only the right to fees, but also in the method of calculating the fees).  The percentage approach has been endorsed by the California Supreme Court.  *Laffitte v. Robert Half Int. Inc.*, 1 Cal.5th 480 (2016) ("Robert Half") (endorsing a 1/3 percentage for fees in wage and hour class actions.)

Class Counsel humbly requests 33% of the Settlement Fund based on their tenacious litigation (lodestar calculation), fronting all costs and working on a contingency basis against a formidable Defendant.[1]  Small class action litigation firms heavily rely upon the fees they receive on long-running cases because they take tremendous time and resources to the exclusion of other work.  This is yet another factor that militates in favor of Class Counsel's request.

### E.    Class Representative Service Payments

Class Counsel is also seeking reasonable service award payments of $10,000 each for the three Class Representatives for a total of $30,000, to be paid from the Settlement Fund at the time when the Fund is distributed and claims are paid. These proposed service awards will be in addition to any monetary recovery to the Class Representatives pursuant to the plan of allocation.

"The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action

---

[1]  Under *Mangold*, federal courts applying California law also have wider latitude than under federal law in the factors they may use in adjusting a lodestar.

litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 333 n.65 (3d Cir. 2011) (*en banc*) (affirming class action settlement with common fund, providing for service awards of $85,000 to each of two class representatives) (quotation omitted), *cert. denied*, 132 S. Ct. 1876 (2012). *See also Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments"). The requested service awards are reasonable and appropriate.

Here, the Class Representatives have made important contributions to the prosecution and fair resolution of this action on behalf of Class members.[2] They have assisted Class Counsel with the initial investigation; preparing and reviewing the complaint; reviewing drafts of pleadings and other documents; gathering documents and other potential evidence about Defendant and their claims; assisting with various aspects of written and other discovery; discussing the strategy and progress of mediation in the case; and participating in regular conversations about the case. This experience was no doubt stressful for these individuals, particularly for those still in the trucking industry who fear retaliation. When a class representative is a "present or past employee" of a defendant, the class representative's "present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 201 (S.D.N.Y. 1997). The record demonstrates that the proposed enhancement awards for the Class Representatives is reasonable in light of their vigorous pursuit of the class claims since the inception of this litigation.

The requested service awards are also appropriate when compared to the substantial recovery achieved. Courts assessing the reasonableness of requests for service awards may compare the request against the size of the settlement fund.

---

[2] The Class Representatives will submit supporting Declarations with Final Approval papers.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

*See, e.g., Novartis Pharms.,* No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 (affirming $3.775 million in in service award payments in part because it represented only 2.4 percent of the entire monetary award of $152.5 million).    Here, Plaintiffs' requested service awards (totaling $30,000) here collectively represent only about 2.1% of the proposed settlement fund.

## V.    LEGAL ARGUMENT

### A.    Class Action Settlement Procedure

A class action may not be dismissed, compromised, or settled without the approval of the Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for approval of class action settlements.  The Rule 23(e) settlement approval procedure describes three distinct steps where, as here, a class has already been certified:

1. Preliminary approval of the proposed settlement;
2. Dissemination of notice of the settlement to all affected class members; and
3. A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 Newberg on Class Actions §§ 11.22, et seq. (5th ed. 2014) ("Newberg") (describing class action settlement procedure).  By way of this motion, the parties request that the Court take the first step in the settlement approval process and preliminarily approve the proposed Settlement.

### B.    Standards for Preliminary Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis.   "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits[.]" *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).   Courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not . . . be turned into a trial or rehearsal for trial on the merits."   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom*. *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).

Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."   *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (quotation omitted).

Application of these factors here supports an order granting the motion for preliminary approval.   To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness."  Newberg § 11.25.   *The Manual for Complex Litigation* (Fourth) (2011) ("Manual") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. As shown below, the proposed Settlement is fair, reasonable and adequate. Therefore, the Court should allow notice to be disseminated to the Class.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

### C.    Settlement is the Product of Informed, Non-Collusive Negotiation

Adequate discovery and the use of an experienced mediator support the conclusion that settlement negotiations were informed and non-collusive.    *See Villegas v. J.P. Morgan Chase & Co*., CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

This Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the detailed facts and pitfalls of this case.    (Desai Decl. ¶ 33.)    The Parties participated in intensive mediation.    On September 8, 2018, the parties participated in a mediation session before Hon. Gail Andler (Ret.), a well-respected former judge who sat on the Orange County Complex Litigation Panel for many years handling complex wage and hour disputes.    Throughout the course of the mediation, the Parties negotiated intensely.    During the course of the negotiation, it looked as if the Parties had reached an impasse and the mediation may fail.    However, Parties continued their negotiations with Judge Andler and finally reached an agreement to resolve all the claims.    The parties signed a Memorandum of Understanding that same day.    There is no question that this settlement was reached after hard-fought and informed negotiations.

### D.    The Proposed Settlement Is Within the Range of Reasonableness

The parties' proposed Settlement meets the standards for preliminary approval.    First, the Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel, facilitated by experienced and respected mediators, occurring after the parties completed thorough fact discovery.    Newberg § 11.41; *City P'shp. Co. v. Atl. Acquisition Ltd. P'shp*., 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Create-A-Card, Inc. v. Intuit, Inc*., No.

CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept. 22, 2009) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").

Second, the consideration -- a total of $1.4 million for approximately 2,303 truck drivers -- is substantial, particularly in light of the very real risk that the Court dismiss their claims based on Defendant's repeated argument that their claims are barred by *res judicata*. Plaintiffs also faced the likely possibility that any favorable result or judgment would be subject to further appellate review. Although difficult to calculate at the preliminary stage, the substantial recovery should allow each Class member to receive an average individual payment of approximately $ 374.00 per pay period. This number was computed utilizing the following assumptions: net settlement of approximately $860,673.45 ($462,000 in attorneys' fees; $27,326.55 costs; $30,000 enhancements; $20,000 class administration).

Defendant represents that its records show that approximately 2,303 class members are entitled to the Settlement. Thus per employee average has been computed by dividing the net settlement fund ($860,673.45) by the total class size 2,303. Defendant is currently gathering the work week information. While there may be minor fluctuations in the final numbers, the critical point is that the per employee number is *significant* and under the circumstances is certainly more than fair in this wage and hour case. *Scott v. Bimbo Bakeries USA*, No. 2:10cv03154 (E.D. Pa. March 5, 2014) (ECF No. 174) (approving a settlement of wage and hour claims for payments of $900 to each current driver and $450 to each former driver, plus $12,500 enhancement payments); *Tijero v. Aaron Brothers, Inc*., No. C 10-01089-SBA, 2013 WL 6700102 at *3 (N.D. Cal. Dec. 19, 2013) (granting preliminary approval of settlement of wage and hour claims where the average recovery would be between approximately $28 and $45); *Bautista v. Harvest*

*Management Sub*, No. 2:12-cv-10004 (C.D. Cal. Oct. 16, 2013) (ECF No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-member class).

Third, the Settlement does not grant preferential treatment to the Class Representatives or to certain portions of the Class; the plan of allocation provides a neutral and fair way to compensate Class members based on the strength of their claims and the length of their employment during the Class Period.

Fourth, the settlement provides the Class with a timely, certain, and meaningful cash recovery. Any subsequent appeals which are likely here, would result in uncertainty, and would substantially delay any recovery achieved, particularly here in the Ninth Circuit where dockets run deep and wide.

Finally, and perhaps most significantly, this settlement recognizes that legislation, including, but not limited to, the continued proposed changes to the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") by the *Denham Amendment* in the Omnibus Transportation, Housing, and Urban Development funding bill, could affect any further litigation in this case. This Settlement ensures that any further legislation will not affect the recovery received by the Class Members.

### E.    Class Counsel Are Entitled to Reasonable Fees

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work on behalf of the Class. Class Members will be notified of Class Counsel's intent to seek attorneys' fees. It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys.*

1    *Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

2    These principles are particularly important in complex litigation, where

3    private enforcement is a necessary component of legal compliance. *See, e.g.,*

4    *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Perma Life Mufflers, Inc. v.*

5    *Int'l Parts Corp.*, 392 U.S. 134, 139 (1968). Fee awards in successful cases, such

6    as this one, encourage meritorious class actions, and thereby promote private

7    enforcement of, and compliance with, the California Labor Code.

8    In the Ninth Circuit, the district court has discretion in a common fund case

9    to choose either the "percentage-of-the-fund" or the "lodestar" method in

10   calculating fees. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th

11   Cir. 2002); *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1123-24 & n.9 (9th Cir.

12   2002); *Vizcaino*, 290 F.3d at 1047; *WPPSS,* 19 F.3d at 1296. Under either of these

13   methods, Plaintiffs request for attorneys' fees is reasonable.

14   As described above, although California state law applies, even the Ninth

15   Circuit has recognized twenty-five percent as the bench mark percentage for the fee

16   award. *See Paul, Johnson*, 886 F.2d at 272. The fees requested here --

17   approximately one-third of the Settlement Fund -- are within the range of

18   reasonableness established by Ninth Circuit authority. *See, e.g., Knight v. Red*

19   *Door Salons, Inc*., No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) (observing that

20   class action fee awards average around one-third of the recovery). In *Robert Half*,

21   the California Supreme Court upheld an award of common fund attorney fees in a

22   wage and hour settlement that provided for a one-third (1/3) recovery of fees for

23   class counsel. *Laffitte v. Robert Half International Inc*., 1 Cal 5th 480 (2016). In

24   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) the Ninth

25   Circuit similarly established that a court may adjust a fee award upward or

26   downward from the twenty-five percent bench mark based on the following factors:

27   (1) the exceptional results for the class;

28   (2) the risk for its counsel;

13

(3) whether any individual non-monetary benefits were obtained;

(4) whether the fee is at or below market rates; and

(5) the burden on class counsel of prosecuting the case, including whether the case was litigated on a contingency basis. 290 F.3d at 1048-50 (internal quotations omitted).

Each of the *Vizcaino* factors weigh in favor of granting approval of Plaintiffs' application for a bench mark fee award and would, indeed, support a fee award in excess of that requested here.

### 1.    Class Counsel Obtained Excellent Results for the Class In Light of the Burdens of the Litigation

For the last year, this case has been hotly contested and Plaintiffs battled with formidable opposing counsel. Class Counsel has expended extraordinary efforts to marshal the complex evidence required for class certification and fight Defendant's effort to move this case. As explained in detail in the Procedural History, Plaintiffs have been tested throughout this litigation.

Based on the litigation efforts and success, Class Counsel has secured an *all cash* settlement totaling $1,400,000.00 for the benefit of the Class. The Settlement Fund will be available to Class members without the uncertainties and delays associated with what class certification, the ultimate result of any trial, and the very real probability of appeals. Based on present information, each Class Member will receive approximately $374. No one has to make a claim. No one has to submit paystubs or employment records to a third-party administrator. Nor will the Class Members have to sign "verifications" of the total number of weeks they worked to collect their share of the Settlement – all of that will be computed by the administrator *prior* to sending class notice, requiring absolutely no response from the class member (unless, of course, s/he disputes the weeks worked). There is no reversion to IRT. The state of California will hold un-cashed funds for the benefit of the specific Class Member. There can be no serious question that this is a

worthy procedural and monetary recovery for the Class, especially when weighed against the burdens of what would undoubtedly continue to be a resource-intensive case.

### 2.    Class Counsel Assumed Significant Risks In Light of the Complexity of the Legal and Factual Issues in this Case

Uncertainty about whether the Court would certify the case, the outcome in any future trial, and the likelihood of protracted appeals is highly relevant in determining the reasonableness of an award. *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" in applying the percentage fund method); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974) ("[D]espite the most rigorous and competent of efforts, success is never guaranteed.").

Large-scale employment cases of this type are, by their very nature, complicated and time-consuming.  Here, Class Counsel prosecuted this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  (Desai Decl., ¶¶ 17-21.)  In addition, Class Counsel overcame attacks on the pleadings, discovery obstacles, and a rigorous class certification process that required multiple rounds of briefing.  There has been at all times the very real possibility of an unsuccessful outcome, preemption, decertification and *no fee of any kind*, despite the significant costs and labor advanced by Class Counsel on behalf of the Class.  Plaintiffs amply satisfy this requirement.

### 3.    Awards in Similar Cases Demonstrate That Class Counsel Seek A Reasonable Fee Award

As described above, Class Counsel's request for thirty-three percent of the Settlement Funds is completely in harmony with California state courts, and just above the Ninth Circuit's established benchmark of twenty-five percent.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d at 272, 268 (9th Cir. 1989). Nevertheless, this request is in line with the percentages awarded plaintiffs' counsel

1  in other major an employment cases.[3]  Furthermore, since establishing the twenty-

2  five percent benchmark in *Paul, Johnson,* 886 F.2d at 268, courts within the Ninth

3  Circuit have awarded fees above this bench mark in various types of complex

4  litigation.[4]  The awards granted in these complex cases demonstrate that a 33% fee

5  award is appropriate under these circumstances, particularly given the *Robert Half*

6  decision on Plaintiffs' purely California state law wage claims.

### 4.    Other Factors Support Approval of Class Counsels' Fee Request

9       In addition to the *Vizcaino* factors, the Court may consider other factors

10 including: counsel's skill and experience and counsel's lodestar.  *See, e.g., In re*

11 *Heritage Bond Litig.*, MDL 02-1475, 2005 U.S. Dist. LEXIS 13555, at *64-74

12 (C.D. Cal. June 10, 2005).

### i.  Counsel's Skill and Experience

14      Class Counsel's skill and experience weigh in favor of granting the requested

15 fees.   As detailed in the Desai Declaration, Class Counsel has substantial

16 experience prosecuting large-scale complex class actions.   He has extensive

17 experience litigating plaintiff-side employment and consumer matters.   Class

18 Counsel brought the skills and experience necessary to successfully litigate and

19 eventually settle an action of this size and complexity.

### ii.  A Partial Lodestar Cross-Check Alone Supports the Fee Request

21      "A lodestar cross-check is not required in this circuit, and in some cases is

22 not a useful reference point."  *Craft v. County of San Bernardino*, 624 F. Supp. 2d

---

23 [3] *See, e.g., Vedachalam v. Tata Consultancy Servs. Ltd.*, No. 06-0963, 2013 U.S.
24 Dist. LEXIS 100796, at *1-2 and 10 (N.D. Cal. July 18, 2013) (awarding 30% of
settlement fund in an employment class action); *Meijer v. Abbott Laboratories,* No.
07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%).

25 [4] *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming
26 fee award equal to 33% of fund); *Hernandez v. Kovacevich "5" Farms*, No. 04-cv-
5515, 2005 U.S. Dist. LEXIS 48605, at *25-31 (E.D. Cal. September 30, 2005)
27 (33.3% of the $2.52 million settlement in an employment class action); *Linney v.
Cellular Alaska P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal.
28 Jul. 18, 1997) (33.3% fee); *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1375
(N.D. Cal. 1989) (32.8% fee) (decided after Paul, Johnson).

1113, 1122 (C.D. Cal. 2008). Here, however, a cross-check of the lodestar of Class Counsel (which we provide at *preliminary* approval) demonstrates that the requested fee is reasonable. Class Counsel has invested over $899,848.00 in lodestar, based upon over 1,258.42 hours of work. (*See* Desai Decl. ¶ 3 Exh. E); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("[T]he lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."). The lodestar here, which *is* supported by actual billing records, demonstrates that Class Counsel's time and effort committed to this case *far exceed* their fee request of $ 462,000 (1/3 of $1.4 million). On this basis alone, there is no doubt that the fees requested are reasonable. *See Vizcaino,* 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted").

## F.    Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement

Class Counsel request reimbursement of expenses incurred as of this writing, in the amount of $27,326.55 to be paid from the Settlement Funds. (Desai Decl., ¶ 4.) "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *Mitland Raleigh-Durham v. Myer*, 840 F. Supp. 235, 239 (S.D.N.Y.) (citation omitted). Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West, Inc*., 557 F.2d 759, 769 (9th Cir. 1977). Here, Plaintiffs costs include items that were necessary to litigate this case including court reporter and videographer fees for depositions; court and process server fees; postage and carrier fees; electronic research; mediator's fees; photocopies; and case-related travel. (Desai Decl., ¶ 3, Exh. F.) These are

17

1    reasonable and standard expenses.

## VI.   PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  *See* Newberg § 8.32.  The notice must also indicate an opportunity to opt-out, that the judgment will bind all class members who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).  The form of notice is "adequate if it may be understood by the average class member."  Newberg § 11.53.

Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted).  As soon as practicable after the Court grants preliminary approval, Defendant will deliver to Rust Consulting, Inc. the Class List for the Class period which shall contain the full legal name, last known physical address, email address (if known), and dates of employment.

Within 30 days following preliminary approval, the Notice Administrator shall cause the Settlement Notice to be mailed by first-class mail, postage prepaid, to Class members pursuant to the procedures described in the Settlement Agreement, and emailed where possible.  Prior to the Final Approval Hearing, the Notice Administrator will submit to Plaintiffs and Defense Counsel a due diligence declaration to confirm the notice procedures have been completed according to the Court's Order.

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1    Class members will have thirty days from the date the Notice period begins
2    (established by the first day upon which the Notice Administrator provides mail
3    Notice to Class Members ("Notice date")) to opt-out (the "Opt-Out Deadline") of
4    the proposed Settlement.  Any Class member who wishes to be excluded (opt out)
5    from the Class must send a written request for exclusion to the Notice
6    Administrator on or before the close of the Opt-Out Deadline.  The content of the
7    Proposed Class Notice fully complies with due process and Rule 23.

8    The Proposed Class Notice provides the definition of the Class, describes the
9    nature of the action, including the class allegations, and explains the procedure for
10   making comments and objections.  The Class Notice describes the terms of the
11   Settlement with IRT, informs Class members regarding the plan of allocation, and
12   advises Class members that the funds will be distributed at a future time to be
13   determined.  The Class Notice specifies the date, time, and place of the final
14   approval hearing and informs Class members how to exclude themselves from the
15   Class and opt out from settlement, or alternatively, how to file objections, and their
16   right to enter an appearance through counsel.

17   The Class Notice also informs Class members how to exercise their rights
18   and make informed decisions regarding the proposed Settlement and tells them that
19   if they do not opt out, the judgment will be binding upon them.  The Class Notice
20   further informs the Class that Class Counsel will seek costs of up to $27,326.55,
21   Class Counsel's attorneys' fees of approximately 33% ($462,000) of the Settlement
22   fund, and service awards for the current Class Representatives totaling $30,000.

23   Courts have approved class notices even when they only generally describe a
24   settlement. *See, e.g., Mendoza v. United States,* 623 F.2d 1338, 1351 (9th Cir.
25   1980) ("very general description of the proposed settlement" satisfies standards).
26   This Notice exceeds that standard.

27
28

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## VII.  <u>PROPOSED PLAN OF ALLOCATION</u>

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig*., 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig*., No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994).  Here, as explained above, Plaintiffs propose that the Settlement Fund be allocated based upon the total weeks worked in California during the Class Period.  Such *pro rata* distributions are fair and reasonable in wage and hour cases.  *See, e.g., Ching v. Siemens Industry, Inc*., No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) (granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).

## VIII.  <u>THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE</u>

The last step of the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of approval and members of the Class, or their counsel, may be heard in support of or in opposition to the Settlement.  Plaintiffs propose the following schedule for final approval of the Settlement:

| Event | Date |
|---|---|
| Notice of Class Action Settlement to Be Mailed | Within 30 days of Preliminary Approval |
| Opt-Out and Objection Deadline | Within 30 days from Notice Date |

20

| Motion for Final Approval and Attorney's Fees and Costs, and Plaintiffs' service awards. Notice of Notice Administrator Compliance to be filed before Final Approval Hearing. | To be filed 10 days prior to the Final Approval Hearing |
|---|---|
| Final Approval Hearing | [TBD] |

## IX.  <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court grant this motion and set a hearing date for Final Approval.

Respectfully submitted,

Dated:  December 5, 2018

DESAI LAW FIRM, P.C.

By: _____ /s/ Aashish Y. Desai_____
Aashish Y. Desai
Adrianne De Castro
Attorneys for Plaintiffs

**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**