UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CHARLES W. COOLEY, GRADY
ANDERSON, and NICHOLAS MARONE on
behalf of themselves and all
others similarly situated,

            Plaintiffs

    v.

INDIAN RIVER TRANSPORT CO., a
Florida Corporation, and DOES 1-
10, inclusive,

          Defendant.

No. 1:18-cv-00491


ORDER RE: PRELIMINARY
APPROVAL OF CLASS SETTLEMENT

----oo0oo----

       Plaintiffs Charles W. Cooley, Grady Anderson, and
Nicholas Marone were formerly employed by Indian River Transport
Co. ("Indian River") as truck drivers. (First Am. Compl. ("FAC")
¶¶ 1-3 (Docket No. 55).) They brought this putative class action
on behalf of themselves and similarly aggrieved employees. They
allege that Indian River committed various violations of

1

California law[1] by failing to inform its drivers they were entitled to paid meal or rest breaks, not compensating them for rest breaks and other time they were working but not driving, and by providing them with wage statements that did not include all the information required by the Labor Code. (Id. ¶¶ 7-9.)

The parties have reached a settlement which would resolve plaintiffs' claims against defendant. (See Desai Decl. Ex. A, Joint Stipulation of Class Action Settlement and Release (Docket No. 67-2).) Presently before the court is plaintiffs' unopposed motion for preliminary approval of the proposed class, proposed class settlement, proposed class counsels' fee and settlement allocation, and proposed plan of notice. (Docket No. 67.)

I.    Factual and Procedural Background

Defendant Indian River is a food-grade tank carrier providing transportation throughout the United States; though defendant's headquarters are in Florida, it has a facility, clients, and employee drivers in California. (FAC ¶ 4.) At varying points between September 2011 and October 2017, plaintiffs were employed by defendants to drive routes in and through California. (Id. ¶¶ 1-3.) Plaintiffs allege that their pay was piece-rate compensation at approximately $.35 a mile. (Id. ¶ 6) They also allege that defendant neither informed them of their right to take, nor compensated them for, rest breaks. (Id. ¶¶ 20-31; id. ¶¶ 37-43.) Plaintiffs also allege that they

---

[1]    Specifically, plaintiffs allege violations of California Labor Code §§ 226 & 512; 226.7; 1194; and 200-03. Plaintiffs also allege violations of California Business and Professions Code Section 17200, et seq.

were not paid wages for unpaid labor at the beginning or end of their shifts or for the time they spent in their trucks' sleeper births.  (Id. ¶¶ 32-36.)  Finally, plaintiffs allege that defendant failed to provide them with accurate wage statements as required by law.  (Id. ¶¶ 44-50.)

These claims are substantively very similar to those brought by former Indian River truck drivers Todd Shook and Herschel Berringer.  See Shook v. Indian River Transp. Co., 236 F. Supp. 3d 1165 (E.D. Cal. 2017), aff'd, 716 F. App'x 589 (9th Cir. 2018).  Following a bench trial, a judgment for defendants was entered in that case.  The court ruled that plaintiffs' claims were barred because Indian River had made Safe Harbor payments under California Labor Code § 226.2,[2] and therefore had an affirmative defense to allegations regarding its failure to properly compensate its employees for rest periods and other breaks in the period between July 1, 2012 and December 31, 2015.  Id. at 1175.  Since neither plaintiff had worked for Indian River during the post-Safe Harbor period, i.e. after January 1, 2016,

---

[2]     This statute states that if an employer pays its current and former employees 4% of their gross wages between July 1, 2012 and December 31, 2015, then it will have an affirmative defense against:
> any claim or cause of action for recovery of wages, damages, liquidated damages, statutory penalties, or civil penalties, including liquidated damages pursuant to Section 1194.2, statutory penalties pursuant to Section 203, premium pay pursuant to Section 226.7, and actual damages or liquidated damages pursuant to subdivision (e) of Section 226, based solely on the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive time for time periods prior to and including December 31, 2015[.]

Cal. Lab. Code § 226.2.

their claims against Indian River were barred.  Id.

This case was filed in May 2017 in Orange County Superior Court.  Defendant removed the case to the United States District Court for the Central District of California (Docket No. 3) and then, in April 2018, the case was transferred to this district (Docket No. 42).  Plaintiffs filed a first amended complaint in June 2018 (Docket No. 55) and, in September 2018, the parties engaged in a full-day mediation in Irvine, CA.  By the end of the day, the parties had reached an agreement and executed a memorandum of understanding codifying their intention to settle all claims of plaintiffs and the putative class against defendant for $1.4 million.  (Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement at 3-4 (Docket No. 67).)

II.  Discussion

Judicial policy strongly favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

There are two stages to a court's approval of a proposed class action settlement.  In the first phase, the court temporarily certifies a class, authorizes notice to that class, and preliminarily approves the settlement, with final approval contingent on the outcome of a fairness hearing.  Ontiveros v. Zamora, No. 2:08-567-WBS-DAD, 2014 WL 3057506, at *2 (E.D. Cal.

July 7, 2014.)  If a court determines that a proposed class action settlement does deserve preliminary approval, then notice of the action is given to the class members and a fairness hearing is held.

At the fairness hearing, the court will entertain class members' objections to both the suitability of the class action as a vehicle for this litigation and the terms of the settlement. See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  After the fairness hearing, the court will make a final determination regarding whether the parties should be allowed to settle the class action pursuant to the agreed upon terms.  See Mora v. Cal W. Ag Servs., Inc., No. 1:15-CV-1490-LJO-EPG, 2018 WL 3201764, at *3 (E.D. Cal. June 28, 2018), report and recommendation adopted, No. 1:15-CV-1490 LJO EPG, 2018 WL 4027017 (E.D. Cal. Aug. 22, 2018)("Following the fairness hearing, taking into account all of the information before the court, the court must confirm that class certification is appropriate, and that the settlement is fair, reasonable, and adequate.").

Here, the court performs only the preliminary step of class settlement approval.  Before turning to the propriety of the proposed settlement, however, the court must first determine whether certification of the settlement class is proper.  See Staton, 327 F.3d at 952 (stating that in cases where "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement.").

5

A.   Class Certification

     To be certified, the putative class must satisfy both
the requirements of Federal Rule of Civil Procedure 23(a) ("Rule
23(a)") and Federal Rule of Civil Procedure 23(b)("Rule 23(b)").
See Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir.
2013).  In the settlement context, the court's careful scrutiny
of the extent to which the putative class complies with the
requirements of Rules 23(a) and 23(b) is especially important
since the court will "lack the opportunity, present when a case
is litigated, to adjust the class, informed by the proceedings as
they unfold."  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620
(1997).

     1.   Rule 23(a) Requirements

     Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all
> members is impracticable; (2) there are questions of
> law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of
> the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a).  The court will address each of these four
requirements in turn.

     a.   Numerosity

     A proposed class must be "so numerous that joinder of
all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Though
there is no definite threshold for determining numerosity, the
requirement is presumptively satisfied by a proposed class of at
least forty members.  See Collins v. Cargill Meat Sols. Corp.,
274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have
routinely found the numerosity requirement satisfied when the

class comprises 40 or more members."). Here, plaintiffs seek to represent a class of approximately 2,303 Indian River employees and former employees. (Desai Decl. ¶ 28.) The numerosity requirement is easily satisfied by the proposed settlement class.

b. Commonality

Commonality hinges on whether the class members' claims "depend upon a common contention" that is "capable of classwide resolution – – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Moreover, "all questions of fact and law need not be common to satisfy the rule." Hanlon, 150 F.3d at 1019. Rather, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id.

Here, the settlement classes are comprised of all California and non-California resident drivers employed by Indian River "who performed work in California for at least one full day from 4 years prior to the filing of this complaint to the present." (Pl.'s Mot. for Class Certification at 1 (Docket No. 33).) The members of the putative class, like the named plaintiffs, would be alleging that defendant failed to notify them of their right to meal and rest breaks, failed to separately pay them for rest periods, failed to compensate them for time spent in the sleeper berth, and failed to provide them with accurate pay stubs as required by law. These contentions arise out of a common core of salient facts and constitute a shared set

of allegations regarding the legality of defendant's conduct vis-à-vis California's wage and hours laws.

Since the class's claims implicate common issues of law, the putative class satisfies the commonality requirement.

c.  <u>Typicality</u>

Rule 23(a) also requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Ninth Circuit has held that to meet the typicality requirement, the named plaintiffs' claims must be "reasonably coextensive with those of absent class members." <u>Hanlon</u>, 150 F.3d at 1020. In evaluating the named plaintiffs' typicality, courts must look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." <u>Hanon v. Dataprods. Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

The putative class members allege a set of facts that is essentially identical to those alleged by the named plaintiffs. Both the class members and the named plaintiffs were employed by the Indian River as truck drivers and allege that they were injured by defendant's wage and wage statement policies. The mere fact that class members may have worked for varying lengths of time and may therefore have suffered to varying degrees does not mean that the injuries of the named plaintiffs are atypical of the class. <u>See</u>, <u>e.g.</u>, <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 450 (E.D. Cal. 2013)

(England, J.) (holding that named plaintiff satisfied the typicality requirement in spite of "minor factual differences" amongst the size of class members' claims because he was "subject to the same policies and practices" as other class members); Kamar v. Radio Shack Corp., 254 F.R.D. 387, 396 (C.D. Cal. 2008) (noting that variation in "actual hours of work" between class members in a wage-and-hour class action "does not defeat typicality"). Moreover, the differences in the amount worked are taken into account by the settlement agreement's "Plan of Allocation," which allots payments based on the total weeks worked in California during the class period. (Mot. for Prelim. Class Action Settlement at 5 (Docket No. 67).) The proposed class therefore meets the typicality requirement.

### d.    Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

In most respects, for reasons discussed above in the "commonality" and "typicality" sections, the named plaintiffs' interests appear to be co-extensive with those of the class. However, the settlement provides for an incentive award of $10,000 to each of the three named plaintiffs. (Settlement Agreement ¶ 15 (Docket No. 67-2).) Although the Ninth Circuit

has specifically approved the award of "reasonable incentive payments" to named plaintiffs, the use of an incentive award nonetheless raises the possibility that a plaintiff's interest in receiving that award will cause his interests to diverge from the class's interest in a fair settlement. See Staton, 327 F.3d at 977-78 (declining to approve a settlement agreement where size of incentive award suggested that named plaintiffs were "more concerned with maximizing [their own] incentives than with judging the adequacy of the settlement as it applies to class members at large"). As a result, district courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

Though the proposed incentive award of $10,000 is not per se unreasonable,[3] it is very high considering the average class member's recovery of $374 and the fact that, collectively, the incentive rewards constitute more than 2% of the gross recovery. See, Sandoval v. Tharaldson Emp. Mgmt., Inc., Civ. No. 08-482 VAP OPx, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (finding that an award of 1.66 percent of the gross settlement amount was "excessive under the circumstances of this case").

The court's concerns about the reasonableness of the proposed incentive fees are heightened by the fact that there is no evidence in the record of exceptional contributions by the

[3]  See, e.g., Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding that incentive award of $50,000 to each named plaintiff was fair and reasonable); Glass v. UBS Fin. Servs., Inc., Civ. No. 04-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive award of $25,000 for each of four named plaintiffs).

named plaintiffs in service of the class. Yes, they were "ready to be deposed" and "readily available" to counsel, (Desai Decl. ¶ 31,) but those are the typical duties of class representatives, not the extraordinary contributions that would merit incentive payments constituting such a substantial portion of the gross settlement.

Nevertheless, at this stage, the court cannot determine that the proposed $10,000 incentive awards render named plaintiffs inadequate representatives of the class. It emphasizes, however, that this is only a preliminary determination. On or before the date of the final fairness hearing, the parties should prepare evidence of the named plaintiffs' substantial efforts as class representatives in order to better justify the discrepancy between their awards and those of the unnamed class members.

Plaintiffs' counsel are experienced attorneys with significant knowledge of class actions, specifically wage and hour class actions. (Desai Decl. ¶¶ 11-12.) Class counsel also indicate that the decision to settle this case was reached after considerable deliberation, review of hundreds of documents, and an all-day mediation session on September 8, 2018. (Id. ¶¶ 5-10.) As such, "the court can safely assume that plaintiff's counsel has vigorously sought to maximize the return on its labor and to vindicate the injuries of the entire class." Murillo, 266 F.R.D. at 476. Accordingly, the court finds that plaintiffs and plaintiffs' counsel are adequate representatives of the class, and therefore that plaintiffs have satisfied all of the requirements for certification set forth in Rule 23(a).

2.    Rule 23(b)

To be certified as a class action, an action must not
only meet all of the prerequisites of Rule 23(a), but also
satisfy the requirements of one of the three subdivisions of Rule
23(b).  Plaintiffs seek certification under Rule 23(b)(3), which
provides that a class action may be maintained only if (1) "the
court finds that questions of law or fact common to class members
predominate over questions affecting only individual members" and
(2) "that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy."  Fed.
R. Civ. P. 23(b)(3).

a.    Predominance

"Because Rule 23(a)(3) already considers commonality,
the focus of the Rule 23(b)(3) predominance inquiry is on the
balance between individual and common issues."  Murillo v. Pac.
Gas & Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing
Hanlon, 150 F.3d at 1022); see also Amchem, 521 U.S. at 623 ("The
Rule 23(b)(3) predominance inquiry tests whether proposed classes
are sufficiently cohesive to warrant adjudication by
representation.").

Here, plaintiffs' allegations concern Indian Rivers'
alleged failure to inform drivers about their right to paid
breaks, as well as its practices regarding driver compensation
for rest breaks, meal breaks, and time spent in the sleeper
berths.[4]  The evidence therefore demonstrates that a "common

---

[4]    Even if these claims were ultimately incorrect on the
merits, that fact alone would not undermine a finding of
predominance.  See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,
568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that

12

nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022. Insofar as individualized issues remain in the litigation, those issues largely relate to the amounts that individual drivers were allegedly underpaid. Discrepancies in the amount of underpayment are damages questions that do not undermine a finding of predominance. See, e.g., Ortega v. J.B. Hunt Transp., Inc., 258 F.R.D. 361, 372 (C.D. Cal. 2009) (concluding that discrepancies in compensation under piece rate system did not undermine predominance when liability could be assessed on a class-wide basis); Kamar, 254 F.R.D. at 404 (finding that discrepancy in hours worked between class members "bears not on the predominance of common questions of liability, but on the amount of damages").

To the extent that any further individual issues may exist, there is no indication that those issues would be anything more than "local variants of a generally homogenous collection of causes," Hanlon, 150 F.3d at 1022, related to the named plaintiff's allegations. These divergences, therefore, are "not sufficiently substantive to predominate over the shared claims." Id. at 1022-23. Accordingly, the court finds the predominance requirement is satisfied.

b. Superiority

In addition to the predominance requirement, Rule 23(b)(3) permits class certification only upon a showing that "a class action is superior to other available methods for fairly

questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

13

and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It sets forth four non-exhaustive factors that courts should consider in making this determination. They are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id. Since the parties settled this action prior to certification, factors (C) and (D) are inapplicable. See Murillo, 266 F.R.D. at 477 ("Some of these factors, namely (D) and perhaps (C), are irrelevant if the parties have agreed to a pre-certification settlement.").

The court is unaware of any concurrent litigation regarding the issues presented here against Indian River. Given the lack of ongoing competing lawsuits, it is unlikely that other individuals have an interest in controlling the prosecution of this action or other actions against Indian River for related claims, although objectors at the fairness hearing may reveal otherwise. At this stage, and in light of the above considerations, the class action appears to be the superior method for adjudicating this controversy.

### 3.   Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.

14

R. Civ. P. 23(c)(2)(B).  Actual notice is not required.  <u>Silber</u>
<u>v. Mabon</u>, 18 F.3d 1449 (9th Cir. 1994).  The notice provided to
absent class members, however, must be "reasonably certain to
inform the absent members of the plaintiff class".  <u>Id.</u> at 1454
(quoting <u>In re Victor Techs. Sec. Litig.</u>, 792 F.2d 862, 865 (9th
Cir. 1986).)

        The proposed settlement notice (Docket No. 67-2) as
well as plaintiffs' memorandum in support of their Motion for
Preliminary Class Action Approval indicate that Rust Consulting
Inc. will serve as the settlement administrator.  Rust Consulting
is the nation's largest labor and employment settlement
administrator and has experience on more than 2700 labor and
employment cases.  (Desai Decl. Ex. B.)  Several of those cases
have been in this district.  <u>See, e.g.</u>, <u>Rojas v. Zaninovich</u>, No.
1:09-CV-00705-AWI-JLT, 2015 WL 13662178 (E.D. Cal. Oct. 2, 2015);
<u>McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.</u>, No. 1:16-
CV-00157-DAD-JLT, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017).

        The settlement agreement provides that following
preliminary approval, defendant will provide Rust Consulting with
the names, addresses, work week information, and social security
numbers of all class members during the class period.  The
settlement administrator shall take steps to confirm the contact
information provided and within approximately 30 days following
the preliminary approval of the settlement shall, via First Class
U.S. Mail, mail a notice packet to all class members.  The court
is satisfied that this system of providing notice is reasonably
calculated to provide notice to class members.

        Likewise, the notice itself clearly identifies the

options available to putative class members and comprehensively explains the proceedings, the definition of the class, the terms of the settlement, and the procedure for objecting to, or opting out of, the settlement. (Desai Decl. Ex. A at 2 (67-2).) The content of the notice is therefore sufficient to satisfy Rule 23(c)(2)(B). See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The court notes, however, that rather than providing class members with an opt-out form, the notice instructs class members to compose a letter clearly stating their desire not to participate in the settlement. To ease the burden of opting out on class members, the notice shall be revised to offer class members fixed language which they can recite in a letter if they wish to opt-out of the settlement.

B. Preliminary Settlement Approval

Having determined that the proposed class preliminarily satisfies the requirements of Rule 23, the court will now examine whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). This process requires the court to "balance a number of factors," including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the

16

> experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026. Since many of these factors cannot be considered until the final fairness hearing, "the court need only conduct a preliminary review so as to resolve any 'glaring deficiencies' in the settlement agreement before authorizing notice to class members" Ontiveros 2014 WL 3057506, at *12 (citing Murillo, 266 F.R.D. at 478).)

### 1. Negotiation of the Settlement Agreement

Plaintiffs' counsel stated that the settlement was reached "through arms-length bargaining with sufficient investigation and discovery to allow a cogent evaluation." (Desai Decl. ¶ 29.) He declares he took into account the risk that the class would not be certified as well as the present value of receiving the settlement funds now as opposed to after lengthy litigation. (Id. ¶¶ 26-28.) Moreover, plaintiffs' counsel has reviewed thousands of pages of documents and extensively analyzed the legal defenses available to the defendant. (Id. ¶ 27.) The parties' negotiations culminated in a private mediation on September 6, 2018, in Irvine California before Judge Gail Andler (Ret.). (Mem. in Supp. of Mot. for Prelim. Class Settlement at 3.) The participation of Retired Judge Gail Andler in the settlement process suggests that the proposed settlement is in fact the result of arms-length bargaining. See Satchell v. Fed. Express Corp., No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (observing that, "[t]he assistance of an experienced mediator in the

settlement process confirms that the settlement is non-collusive.").  Given the parties' representations to the court about the nature and intensity of the negotiations and the involvement of a mediator in the settlement process, the court does not question that the proposed settlement was the result of arms-length bargaining.  See Fraley v. Facebook, Inc., 966 F.Supp.2d 939, 942 (N. D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

> ### 2.  Amount Recovered and Distribution

In determining whether a settlement agreement is substantively fair to class members, the court must balance the value of expected recovery against the value of the settlement offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  This inquiry may involve consideration of the uncertainty class members would face if the case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at *14.  Plaintiffs' counsel estimates defendant's total exposure at over $12,000,000.  (Desai Decl. ¶ 25.)  This estimate is based upon the defendant's Notice of Removal (Docket No. 3), which stated the amounts in controversy for plaintiff's causes of action as follows: (1) $2,663,250 for failure to advise employees of right to take meal breaks; (2) $2,663,250 for failure to advise employees of right to take rest breaks; (3) $3,309,026 for failure to pay all wages for sleeper berth time (for the California resident class only); and (4) $3,960,504 for waiting time penalties.  (Notice of Removal ¶ 40.)

The proposed gross settlement amount of $1.4 million is just over 11% of the estimated potential recovery in this case. Class counsel represents that the $12 million pretrial recovery does not account for the delay of litigation; the risk that the class may not be certified; or the possibility that some claims may not proceed on the merits. (Desai Decl. ¶ 25.) Though this settlement represents far less than plaintiffs could have potentially secured had the case gone to trial, it is not plainly deficient. See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.")

For reasons discussed elsewhere in this order, the amount of the attorney's fee award, see infra II.B.3, and the amount of plaintiff's incentive award, see supra II.A.1.D, do give the court pause. Nonetheless, the court cannot conclude at this stage that either award is excessive, let alone so grossly excessive that it imperils the fairness or adequacy of this settlement. Cf. Murillo, 266 F.R.D. at 480 (preliminarily approving settlement in spite of concerns that attorney's fee award was excessive). Accordingly, because the settlement appears "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2), the court will preliminarily approve the settlement agreement pending a final fairness hearing.

### 3. Attorney's Fees

If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the

overall context of the settlement.  <u>Knisley v. Network Assocs.</u>, 312 F.3d 1123, 1126 (9th Cir. 2002).  The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).

When, as in the instant case, a federal court sits in diversity, state law governs the right to fees as well as the calculation of fees.  <u>See</u> <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470 (9th Cir. 1995).

In California, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund."  <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 34 (1977).  California courts calculating a reasonable award of attorneys' fees may do so either by taking a percentage of the benefit secured for the class, or by using a lodestar.  <u>Richardson v. THD At-Home Servs., Inc.</u>, No. 1:14-CV-0273-BAM, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016).  However, there is no "definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach."  <u>Id.</u> at *7.  Accordingly, this court will turn to Ninth Circuit case law on the reasonableness of attorneys' fee awards in evaluating plaintiffs' counsel's request.  <u>Cf.</u> <u>Id.</u>

Given that the percentage method is particularly

appropriate in common fund cases where "the benefit to the class is easily quantified," Bluetooth, 654 F.3d at 942, this court will primarily use the percentage method in evaluating plaintiffs' counsel's requested fees.  The Ninth Circuit has approved a "benchmark" percentage of 25%, and courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." Id. (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).)

Plaintiffs' counsel requests a percentage award of 33.3% of the common fund.  (Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement at 13.)  While some courts have approved percentage awards as high as 33.3%, awards of that size are typically disfavored unless they are corroborated by the lodestar or reflect exceptional circumstances.  See, e.g., Adoma, 913 F. Supp. 2d at 982–83 (rejecting class counsel's argument that a 33.3% award was appropriate and distinguishing cases).

Class counsel attempts to justify the requested upward departure from the Ninth Circuit's 25% benchmark by comparing the $462,000 in requested attorneys' fees with a supposed $899,848 lodestar.  (Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement at 16-17.)  The court is not convinced by this attempted justification.

Lodestar calculation is a two-step process. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).  First, the court "tak[es] the number of hours reasonably expended on the litigation and multipl[ies] it by a reasonable hourly rate." Id. Second, the court may adjust the resulting figure upwards or

21

downwards based on a variety of factors.  Id.

In this case, the problems with the first step of plaintiffs' counsel's lodestar calculation process are so fundamental that the court will not even reach the second part of the analysis.

Plaintiffs' counsel asks for $850 per hour for Mr. Desai and $550 per hour for his associate Ms. De Castro.  (See Desai Decl. ¶ 16.)  Plaintiffs' counsel's lodestar figure relies on the assumption that the typical hourly rates of his Orange County, CA firm are "reasonable" in this case.  They are not.

The definition of a "reasonable hourly rate" for purposes of lodestar calculation is tethered to the "prevailing market rate in the relevant community."  BMO Harris Bank N.A. v. CHD Transp. Inc., No. 1:17-CV-00625-DAD-BAM, 2018 WL 4242355, at *7 (E.D. Cal. Sept. 6, 2018).  When calculating lodestar, the "relevant community" is the forum in which the adjudicating district court sits.  Id.  As in BMO Harris Bank, the "relevant community" for purposes of lodestar calculation in this case is the Fresno Division of the Eastern District of California.  Id.  In other words, "Fresno rates for Fresno cases."  Richardson, 2016 WL 1366952, at *11.

Typical rates for highly experienced attorneys in the Fresno Division of the Eastern District of California are between $350.00 and $400.00 per hour.  See, e.g., Leprino Foods Co. v. JND Thomas Co., Inc., No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), report and recommendation adopted in part, No. 1:16-cv-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017).  Even the high end of that range is less than

22

half of the $850 per-hour fee requested for Mr. Desai.  Likewise, in Fresno, "$300 is the upper range for competent attorneys with approximately a decade of experience."  Barkett v. Sentosa Props. LLC, No. 1:14-CV-01698-LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.).  Plaintiffs' counsel's request of $550 per hour for Ms. De Castro, who graduated law school in 2005, is 1.83 times that amount.  Given the prevailing market rates in Fresno, these requested hourly rates for Mr. Desai and Ms. De Castro are unreasonably high.

Plaintiffs' counsel's lodestar request is also faulty because it includes costs and fees stemming from a separate lawsuit that plaintiff's counsel previously litigated - - and lost - - against Indian River.  Whatever benefit the "background information" gained from the Shook case may have been to the class members in the instant case (Desai Decl. ¶ 9), plaintiff has not convincingly shown that the class members in this case ought to pay for the loss in Shook, 1:14-CV-1415-WBS-BAM.

In spite of these reservations, the court need not reduce the fee award at this point in the case. See Murillo, 266 F.R.D. at 480 (granting preliminary approval of the settlement despite concerns that the proposed attorney's fee award was unreasonable).  Instead, the court preliminarily approves the fee award on the understanding that class counsel must demonstrate, on or before the date of the final fairness hearing, that the proposed award is reasonable in light of the hours expended and the circumstances of the case. In the event that class counsel is unable to do so, the court would then be forced to reduce class counsel's fees to a reasonable amount or to deny final approval

of this settlement.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

IT IS THEREFORE ORDERED that plaintiff's motion for preliminary certification of a conditional settlement class and preliminary approval of the class action settlement (Docket No. 67) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) the following class be provisionally certified for the purpose of settlement in accordance with the terms of the stipulation: all persons who were employed by Indian River Transport Co. as a truck driver at any time during the period from April 7, 2013 through January 23, 2019, and performed work for Indian River for at least one full day in the State of California at any time;

(2) Charles W. Cooley, Grady Anderson, and Nicholas Marone are appointed as the representatives of the settlement class and are provisionally found to be adequate representatives within the meaning of Federal Rule of Civil Procedure 23;

(3) Desai Law Firm, P.C., is provisionally found to be a fair and adequate representative of the settlement class and is appointed as class counsel for the purposes of representing the settlement class conditionally certified in this order;

(4) Rust Consulting, Inc. is appointed as the settlement administrator;

(5) the form and content of the proposed Notice of Class Action Settlement (Desai Decl. Ex. A) are approved, upon the condition that they be modified to: (a) contain language which class members who wish to opt-out can recite in opt-out

letters sent to the settlement administrator; and (2) reflect
dates modified by this order;

(6) no later than ten (10) days from the date this
order is signed, defendants' counsel shall provide the names and
contact information of all settlement class members to Rust
Consulting, Inc.;

(7) no later than thirty (30) days from the date this
order is signed, Rust Consulting shall mail a Notice of Class
Action Settlement to all members of the settlement class;

(8) no later than sixty (60) days from the date this
order is signed, any member of the settlement class who intends
to object to, comment upon, or opt out of the settlement shall
mail written notice of that intent to Rust Consulting, pursuant
to the instructions in the Notice of Class Action Settlement;

(9) a Final Fairness Hearing shall be held before this
court on **Monday, May 6, 2019 at 1:30 p.m.** in Courtroom 5 to
determine whether the proposed settlement is fair, reasonable,
and adequate and should be approved by this court; to determine
whether the settlement class's claims should be dismissed with
prejudice and judgment entered upon final approval of the
settlement; to determine whether final class certification is
appropriate; and to consider class counsel's applications for
attorney's fees, costs, and an incentive award to plaintiff. The
court may continue the final fairness hearing without further
notice to the members of the class;

(10) no later than twenty-eight (28) days before the
final fairness hearing, class counsel shall file with this court
a petition for an award of attorneys' fees and costs.  Any

objections or responses to the petition shall be filed no later than fourteen (14) days before the final fairness hearing. Class counsel may file a reply to any objections no later than seven (7) days before the final fairness hearing;

(11) no later than twenty-eight (28) days before the final fairness hearing, class counsel shall file and serve upon the court and defendant's counsel all papers in support of the settlement, the incentive award for the class representative, and any award for attorneys' fees and costs;

(12) no later than twenty-eight (28) days before the final fairness hearing, Rust Consulting, Inc. shall prepare, and class counsel shall file and serve upon the court and defendants' counsel, a declaration setting forth the services rendered, proof of mailing, a list of all class members who have opted out of the settlement, and a list of all class members who have commented upon or objected to the settlement;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the final fairness hearing in person or by counsel and be heard to the extent allowed by the court in support of, or in opposition to, (a) the fairness, reasonableness, and adequacy of the proposed settlement, (b) the requested award of attorneys' fees, reimbursement of costs, and incentive award to the class representative, and/or (c) the propriety of class certification. To be heard in opposition at the final fairness hearing, a person must, no later than forty-five (45) days from the date this order is signed, (a) serve by hand or through the mails written notice of his or her intention to appear, stating the name and case

number of this action and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel and counsel for defendants, and (b) file said appearance, objections, papers, and briefs with the court, together with proof of service of all such documents upon counsel for the parties.

Responses to any such objections shall be served by hand or through the mails on the objectors, or on the objector's counsel if any there be, and filed with the court no later than fourteen (14) calendar days before the final fairness hearing. Objectors may file optional replies no later than seven (7) calendar days before the final fairness hearing in the same manner described above. Any settlement class member who does not make his or her objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed settlement, the judgment entered, and the award of attorneys' fees, costs, and an incentive award to the class representative unless otherwise ordered by the court.

(14) pending final determination of whether the settlement should be ultimately approved, the court preliminarily enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.

Dated:  January 24, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

27