1  DESAI LAW FIRM, P.C.
   Aashish Y. Desai, Esq. (SBN 187394)
2  Adrianne De Castro, Esq. (SBN 238930)
   3200 Bristol Street, Ste. 650
3  Costa Mesa, CA  92626
   Telephone:  (949) 614-5830
4  Facsimile:   (949) 271-4190
   aashish@desai-law.com
5  adrianne@desai-law.com

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11 CHARLES W. COOLEY, GRADY          ) Case No.:18-CV-00491-WBS-
   ANDERSON, NICHOLAS MARONE on     ) BAM
12 behalf of themselves and all others )
   similarly situated,                ) Judge:  William B. Shubb
13                                     )
                Plaintiffs,            ) **MOTION FOR FINAL**
14                                     ) **APPROVAL; AND FOR**
   v.                                  ) **ATTORNEY'S FEES AND COSTS**
15                                     )
   INDIAN RIVER TRANSPORT CO., a      )
16 Florida Corporation, and DOES 1-10, )
   inclusive,                         )
17                                     )
                Defendants.           ) **HEARING SCHEDULE**
18                                     )
                                      ) Date:    May 6, 2019
19                                     ) Time:    1:30 p.m.
                                      ) Room:    5
20                                     ) Judge:   Hon. William B. Shubb
                                      )
21                                     )
                                      )
22                                     )
                                      )
23                                     )
24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .....................................3

III.  TERMS OF SETTLEMENT .................................................4

    A.  Settlement Sums and Additional Consideration ...........................4

    B.  Monetary Relief to Class Members ..................................5

    C.  Release of All Claims Against the Settling Defendants ...........................5

    D.  Attorneys' Fees and Costs ..................................5

    E.  Class Representative Service Payments..................................6

IV.   ARGUMENT ................................................7

    A.  Class Action Settlement Approval Process ..................................7

    B.  The Court-Approved Notice Program Meets Applicable
        Standards and Has Been Fully Implemented..................................8

    C.  Final Approval of the Settlement is Appropriate..................................9

        1.  The Settlement Is the Product of Arm's-Length Negotiations
            Between the Parties and Follows Years of Hard-Fought
            Litigation and Plaintiffs' Thorough Investigations .............................10

        2.  The Settlement is Fair, Reasonable, and Adequate .............................11

        3.  The Recommendation of Experienced Counsel Favors Approval .......12

        4.  The Class Response Favors Final Approval..................................12

    D.  Class Representative Service Payments ..................................13

    E.  Class Counsel Is Entitled to Reasonable Fees Under the
        Lodestar and Percentage of the Fund Methods ..................................16

        1.  Class Counsel's Request for Fees Is Reasonable Under
            the Lodestar Method..................................17

        2.  Class Counsel's Request for Attorneys' Fees is Reasonable
            Under the Percentage of the Fee Analysis..................................23

    F.  Class Counsel Are Entitled to Reimbursement of Expenses Under

the Settlement Agreement ........................................................................24

V.    CONCLUSION ............................................................................................25

# TABLE OF AUTHORITIES

C̲ᴀꜱᴇꜱ

*Baganha v. Cal. Milk Transp.*,
  No. 1:01–cv–05729–AWI– LJO,
  Doc. No. 147 (E.D. Cal. July 22, 2004) ................................................................24

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 454 (2013) ..........................................................................................25

*Beck, et al. v. Boeing Co.*,
  Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash Oct. 8, 2004) ..............15

*Benitez v. Wilbur*,
  No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) .............23

*Blanchard v. Bergeron*,
  489 U.S. 87, 94-95 (1989) .....................................................................................17

*Blum v. Stenson*,
  465 U.S. 886, 900 n.16 (1984) ..............................................................................17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472, 478 (1980) .......................................................................................16

*Bond v. Ferguson Enterprises, Inc.*,
  No. 1:09–cv–01662– OWW–MJS, Docket No. 59 (E.D. Cal. June 30, 2011).....23

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610, 624 (N.D. Cal. 1979) ...............................................................12

*Chavez v. Petrissans*,
  No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) ..............23

*Ching v. Siemens Industry, Inc.*,
  No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013) .........................................11

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566, 576 (9th Cir. 2004);

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268, 1276 (9th Cir. 1992)........................................................................9

*Churchill Village, LLC v. General Electric*,
  361 F.3d 566, 577 (9th Cir. 2004)..........................................................................13

*City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*,
  100 F.3d 1041, 1043 (1st Cir. 1996) ......................................................................10

*Class Plaintiffs v. City of Seattle*,
  955 F.2d at 1290 (9th Cir. 1992).......................................................................10, 12

*Create-A-Card, Inc. v. Intuit Inc.*,
  No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989,
  at *8-9 (N.D. Cal. Sept. 22, 2009) .........................................................................10

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15, 18 (N.D. Cal. 1980) ........................................................................12

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145, 1149 (9th Cir. 2001) ....................................................................17

*Ficalora v. Lockheed Cal. Co.*,
   751 F.2d 995, 997 (9th Cir. 1985) .........................................................................10

*Fischel v. Equitable Life Assur. Soc'y*,
   307 F.3d 997, 1006 (9th Cir. 2002 ........................................................................16

*Fontes v. Heritage Operating, L.P.*,
   No. 14-cv-1413- MMA (NLS), 2016 WL 1465158,
   at *6 (S.D. Cal. Apr. 14, 2016) ............................................................................25

*Guippone v. BH S&B Holdings, LLC.*,
   2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) .....................14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1988), 688 F.2d at 626) ........................................9

*Hensley v. Eckerhart*,
   461 U.S. 424, 433 (1983) ......................................................................................17

*Hughes v. Microsoft Corp.*,
   2001 U.S. Dist. LEXIS 5976, *24 (W.D. Wash. Mar. 21, 2001) ........................13

*In Re Bluetooth Headset Prod. Liab. Liti.*,
   654 F.3d 935, 942 (9th Cir. 2011) ........................................................................20

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935, 945 (9th Cir. 2011) ........................................................................17

*In re Toys R Us-Del., Inc.—Fair & Accurate*
*Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438, 472 (C.D. Cal. 2014) ..................................................................15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS") ..................................................16

*Jadwin v. County of Kern*,
   767 F.Supp.2d 1069, 1169 (E.D. Cal. 2011) ........................................................19

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) ................................................24

*Leprino Foods Co. v. JND Thomas, Co., Inc.*
   2017 WL 128502 at *13 (E.D. Cal. Jan. 12, 2017) ..............................................18

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
   671 F. Supp. 819, 822 (D. Mass. 1987) ................................................................10

*Mangold v. Cal. Pub. Utils. Comm'n*, 6
   7 P.3d 1470, 1479 (9th Cir. 1995) ......................................................................5, 6

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173, 1178 (9th Cir. 1977) ...................................................................12

*Miller v. CEVA Logistics USA, Inc.*,
   No. 2:13-CV-01321-TLN, 2015 WL 4730176,
   at *8 (E.D. Cal. Aug. 10, 2015) .........................................................................24

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 529 (C.D. Cal. 2004) ................................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615, 635 (9th Cir. 1982) ...................................................................9, 10

*Ogbuehi v. Comcast of Cal./Colo./Fla./ Or., Inc.*,
   No. 2:13-cv-00672-KJM-KJN, 2015 WL 3622999,
   at *12 (E.D. Cal. June 9, 2015) .........................................................................19

*Parker v. Jekyll & Hyde Entm't Holdings, LLC.*,
   2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. 2010) .......................................14

*Randall Willis et al. v. Cal. Western Transp.*
   and *Earl Baron, et al. v. Cal Western Transp.* (consolidated cases),
   No. 1:00–cv– 05695–AWI–LJO,
   Doc. No. 225 (E.D. Cal. Aug. 20, 2003) ............................................................24

*Roberts v. Texaco, Inc.*
   979 F. Supp. 185, 201 (S.D.N.Y. 1997*)* .........................................................15

*Rodriguez, et al. v. Penske Logistics, LLC.*,
   Case No. 2:14-cv-02061-KJM-CKD ...................................................................19

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05–cv–0484– DLB, 2007 WL 3492841,
   at * 4 (E.D. Cal. Nov.14, 2007) .........................................................................23

*Ross v. Bar None Enters., Inc.*,
   No. 2:13-cv-00234, 2015 WL 1046117,
   at *11 (E.D. Cal. Mar. 10, 2015) .......................................................................25

*Sanchez v. Frito-Lay, Inc.*,
   No. 1:14-CV-00797 AWI, 2015 WL 4662636,
   at *18 (E.D. Cal. Aug. 5, 2015) .........................................................................19

*Schiller v. David's Bridal, Inc.*,
   2012 U.S. Dist. LEXIS 80776 at *19 .................................................................24

*See Linney v. Cellular Alaska P'Ship*,
   Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ,
   1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), aff'd 151 F.3d
   1234 (9th Cir. 1998) ...........................................................................................12

*Sewell v. Bovis Lend Lease LMB, Inc.*,
   No. 09-6548, 2012 U.S. Dist. LEXIS 53556,
   at *41 (S.D.N.Y. April 20, 2012) .......................................................................14

*Shook v. Indian River Transport, Co.*,
  Case No. 1:14-cv-01414-WBS-BAM (E.D. Cal) ..............................................4, 11

*Shook v. Indian River Transport, Co.*,
  No. 17-15322 (9th Cir. 2018)..................................................................................11

*Silvester v. Harris*,
  No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371,
  at *4 (E.D. Cal. Dec. 17, 2014)...............................................................................19

*Staton v. Boeing Co.*,
  327 F.3d 938, 977 (9th Cir. 2003).....................................................................6, 13

*Sugarman v. Ducati N. Am., Inc.*,
  2012 U.S. Dist. LEXIS 3961, *8 (N.D. Cal. Jan. 12, 2012) ...............................13

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 3
  33 n.65 (3d Cir. 2011)........................................................................................6, 16

*The Coca-Cola Co.*,
  200 F.R.D. 685, 694 (N.D. Ga. 2001) .....................................................................15

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370, 1375 (9th Cir. 1993)...........................................................................10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403, 407 (9th Cir.1990)............................................................................18

*Utility Reform Project v. Bonneville Power Admin.*,
  869 F.2d 437, 443 (9th Cir. 1989)..............................................................................9

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943, 950 (9th Cir. 1976).............................................................................9

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294, 299 (N.D. Cal. 1995) .................................................................13

*Vasquez v. Coast Valley Roofing, Inc.*,
  266 F.R.D. 482 (E.D. Cal. 2010) .............................................................................23

*Vasquez v. Jim Aartman, Inc.*,
  No. 1:02–cv–05624–AWI–LJO, Doc. No. 130 (E.D. Cal. Sept. 16, 2005)..........24

*Velez v. Novartis Pharms. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945,
  at *73 (S.D.N.Y. Nov. 30, 2010) ............................................................................15

*Verduzco v. Ford Motor Co.*,
  No. 1:13-CV-01437-LJO, 2015 WL 4131384,
  at *4 (E.D. Cal. July 9, 2015)..................................................................................19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d at 1047 (9th Cir. 2002).......................................................16, 20, 22, 23

*Willis v. City of Fresno*,
  No. 1:09-CV-01766-BAM, 2014 WL 3563310,

at *12 (E.D. Cal. July 17, 2014)................................................................19

*Wininger v. SI Mgmt. L.P.*,
    301 F.3d 1115, 1123-24 & n.9 (9th Cir. 2002) ....................................16

*Zakskorn v. Am. Honda Motor Co.*,
    No. 2:11-cv-02610-KJM-KJN, 2015 WL 3622990,
    at *15 n.4 (E.D. Cal. June 9, 2015).......................................................19

RULES

C.C.P. Section. 1300..............................................................................5

Fed. R. Civ. P. 23 .................................................................................7

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................8

Fed. R. Civ. P. 23(c)(3) .........................................................................8

TREATISES

4 NEWBERG ON CLASS ACTIONS, §§ 11.22, et seq. (4th ed. 2012) ...................7

MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 21.632, et seq. (2004).......7

**MEMORANDUM IN SUPPORT OF MOTION**

## I.    INTRODUCTION

Plaintiffs submit this Memorandum in support of final approval of their class action Settlement with Defendant Indian River Transport, Co. ("IRT" or "Defendant").  The Court should grant final approval of the Settlement because it ends years of intense litigation and is more than fair, reasonable, and adequate to the Class.

The Settlement will resolve all of the claims of the Settlement Class of employees that the Court certified upon preliminary approval of the Settlement. (Dkt. No. 71.)   The Settlement creates an all-cash fund of $1,400,000 (the "Settlement Fund").   Because this is a "no reversion" settlement, there was no unnecessary "claims process" instituted.  The Class employees will simply be given their back-wages.   It is the "gold standard" for wage and hour class action settlements because it imposes almost no burden on the employee while distributing virtually all of the Settlement Fund.  Indeed, Rust Consulting, Inc. reports that the there were only 8 opt-outs and no objections to the settlement or the request for attorneys' fees.  The individual payments average $450.14

This result is particularly impressive in light of the contentious yet professional character of this litigation.  The Court granted preliminary approval of the Settlement on January 24, 2019. ("Preliminary Approval Order"; Dkt. 71.)  The parties then entered into a Stipulation to Amend the Settlement Agreement to allow Defendant to make installment payments into the Settlement Fund.   The Court granted the Stipulation. (Dkt. 74.)

In doing so, the Court found that the Settlement fell within the range of reasonableness, and the factors relevant to final approval all weighed in favor of the Settlement (*id.* at 3); found that the proposed Plan of Allocation was sufficiently fair, reasonable, and adequate (*id.* at 4); approved settlement notice to the Class; appointed a Notice Administrator (*id.* at 5); and ordered a process for dissemination

of the Settlement Notice, responses by Class members, and a Final Approval Hearing (*id.*). The reaction of the Class has been overwhelmingly positive. There is eight (8) requests to opt-out and ***zero*** objections from the 1,920 Notices mailed to Class members. The parties have carried out the Court's Order and the Settlement should be finally approved.

Furthermore, Plaintiffs respectfully move this Court for an order granting: (1) attorneys' fees in the amount of $462,000 representing a 1.6 multiplier of Class Counsel's lodestar of $289,312 (calculated using a lower average hourly rate); (2) reimbursement of $10,000 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action; and (3) service awards in the total amount of $30,000 (i.e. $10,000 each) to the three Class Representatives.

At the preliminary approval hearing, the Court expressed two concerns: (1) Class Counsel request for fees was based lodestar that combined the fees incurred in this case and the *Shook* matter; and (2) Class Counsel's hourly rates. To address those concerns, the above figures represent an adjusted lodestar based solely on the *Cooley* matter, and an adjusted, lower hourly rate for Class Counsel. In addition, Class Counsel is seeking costs for the *Cooley* matter only and has excluded any costs incurred in the *Shook* matter.

This complex action entailed significant risks for Class Counsel and created high demands on their resources. In just the last two months, Class Counsel, upon the request of the Defendant, had to re-negotiate the terms of the Settlement Agreement ***after*** this Court granted preliminary approval of the settlement. This obviously required research and due diligence to ensure the interests of the Settlement Class were protected. The revised Settlement Agreement also highlights the on-going risks faced by Class Counsel of delayed and protracted payment of their fees. Obviously, the Stipulation also extends the time Class Counsel will spend fielding Class Member inquiries and overseeing and enforcing the settlement.

At every stage of this litigation, Defendant vigorously contested it up until

the settlement. As evidenced by the record, Plaintiffs expended 553 hours diligently prosecuting this case, including reviewing thousands of pages of documents; preparing for and taking or defending depositions; attending hearings; and mediation. (Declaration of Aashish Y. Desai in Support of Plaintiffs' Motion for Preliminary Approval, ¶¶ 9-10, Dkt. 67-1.)[1] Class Counsel has also incurred substantial out-of-pocket costs to advance this litigation, including costs for deposition reporting and transcripts; mediation services; and litigation support vendors. *See id.* Class Counsel request for reimbursement of $10,000 for expenses is fully supported by applicable law and the record. (*See* Desai Decl., ¶ 4.)

For the reasons set forth below, Plaintiffs respectfully submit that the attorneys' fees, expense reimbursements, and service awards to the Class Representatives are fair and reasonable under the applicable legal standards and should be granted by this Court.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

As this Court is well aware, this case was intensely litigated from the start. Plaintiffs are current and former truck drivers who work or worked for IRT in the State of California. A more detailed chronicle of the facts can be found in Plaintiffs' Motion for Preliminary Approval. (Dkt. No. 67.) Plaintiffs will provide a brief summary here.

Once this case was filed in May 2017, nearly three years ago, it was hotly contested and required significant and resources from both sides. Plaintiff-truck drivers alleged that IRT's piece-rate compensation scheme illegally failed to separately pay them for non-driving work and rest breaks, and that they were not advised or informed of their right to take meal and rest breaks.

As soon as Plaintiffs filed their state court complaint, litigation ramped up.

_____

[1] Plaintiffs will refer to the Docket when referencing previously-submited evidence rather than submit repetative materials with the current Motion.

IRT answered the Complaint and removed the action to the United State District Court for the Central District, and simultaneously filed a Notice of Related Case to relate this case to *Shook v. Indian River Transport, Co.*, Case No. 1:14-cv-01414-WBS-BAM (E.D. Cal) (the "Shook Action").

The parties continued litigating the case, propounding discovery, and battling over the discovery. Ultimately, Plaintiffs invested time and resources to filing a Motion for Class Certification. Rather than responding, Defendant filed a Motion to Transfer the Case to the Eastern District and stay the class certification proceedings. Plaintiffs vigorously opposed the Motion, but it was ultimately granted by the Court in March 2018. After this case was assigned to this Court, the parties held their first status conference with this Court where Defendant made clear that the Defendant intended to file a dispositive motion. Plaintiffs expressed their intention to doggedly pursue the vindication of their rights. There is no question that if the parties had not settled this case, the parties would have continued litigating their case and expending significant time and resources.

### III. <u>TERMS OF THE SETTLEMENT</u>

The Settlement resolves all claims of Plaintiffs and the Class against Indian River Transport. The details are contained in the attached Settlement Agreement. (Dkt. No. 67-2 ["Settlement Agreement"].) The key terms of the Settlement are described below.

#### A. **Settlement Sums and Additional Consideration**

Settling Defendant will pay $1,400,000 to resolve all claims of Plaintiffs and the Class. This amount is inclusive of attorneys' fees and costs (if approved), the cost of administration, enhancement payments to the Class Representatives (if approved), and taxes attendant to distributions. This is a "no reversion" settlement. The Class will not even have to "make a claim" in order to receive distributions; and distributions will be made *directly* to each class member who does not opt out of the class following notice to the class – and since only eight people have

exercised this option, virtually all of the settlement money will flow *directly* to each truck driver. This is the "gold standard" for class action settlements in employment wage and hour circles. Upon Court approval, any remainder from the Maximum Settlement Amount (if any) shall be tendered in the name of the Settlement Class Member to the California State Controller's Office (SCO), Unclaimed Property Division under the procedures set forth under C.C.P. Section. 1300, *et seq*.

### B.   Monetary Relief to Class Members

After deducting the Class Representative Fees, Class Counsel's awarded attorneys' fees and costs, and the Claims Administrator's fees and expenses, Class Members will receive, from the balance of the Maximum Settlement Amount (the "Net Settlement Proceeds"), a share of the Settlement based on the total number of work-weeks worked during the Class Period. (Settlement Agreement, ¶ 17.)

This distribution is appropriate because it is consistent with how class members were paid, how wage statements were issued, and how pay records were and are maintained.

### C.   Release of All Claims Against the Settling Defendants

In exchange for the IRT's monetary consideration, Class Representatives and the Class will release IRT from all certified claims reasonably arising from the facts in the First Amended Complaint. (Settlement Agreement, ¶ 45.)

### D.   Attorneys' Fees and Costs

Class Counsel moves, and Defendant does not oppose, attorneys' fees of $462,000 from the Settlement Fund, plus costs and expenses of $10,000. Because the settlement Class Counsel obtained successfully resolved California state law claims, the request must be based upon California state law. *Mangold v. Cal. Pub. Utils. Comm'n*, 67 P.3d 1470, 1479 (9th Cir. 1995) (affirming that state law applies in determining not only the right to fees, but also in the method of calculating the fees). As explained more fully below, fees are justified under either approach

here.[2]

### E.    Class Representative Service Payments

As explained in the Motion for Preliminary Approval, Class Counsel is seeking reasonable service award payments of $10,000 each for the three Plaintiffs for their services as Class Representatives for a total of $30,000.  These proposed service awards will be in addition to any monetary recovery to the Class Representatives pursuant to the plan of allocation.

"The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 333 n.65 (3d Cir. 2011) (*en banc*) (affirming class action settlement with common fund, providing for service awards of $85,000 to each of two class representatives) (quotation omitted), *cert. denied*, 132 S. Ct. 1876 (2012). *See also Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").  The requested service awards are reasonable and appropriate.

The Declarations In Support of Final Approval from the Class Representatives illustrate that they have made important contributions to the prosecution and fair resolution of this action on behalf of Class members.[3]  They have assisted Class Counsel with the initial investigation; preparing and reviewing the complaint; reviewing drafts of pleadings and other documents; gathering documents and other potential evidence about Defendants and their claims; assisting with various aspects of written and other discovery; discussing the strategy and progress of mediation in the case; and participating in regular conversations about the case.  For example, Plaintiff Cooley estimates he spent

---

[2]   Under *Mangold*, federal courts applying California law actually have far more latitude than under federal law in the factors they may use in adjusting a lodestar.

[3] The Compendium of Class Representative Declarations are submitted concurrently with this Motion.

somewhere between 175 to 200 hours on case, and Plaintiffs Anderson and Marone estimate they spent 55-75 hours on the case. The entire experience was stressful for these individuals but they persevered because they wanted to make changes for themselves and fellow truck drivers at IRT.

The record amply demonstrates that the proposed enhancement awards of $10,000 each for the three Class Representatives (for a total of $30,000) are reasonable in light of their vigorous pursuit of the class claims since the inception of this litigation. All representatives have agreed to this approach.

## IV.    ARGUMENT

### A.    The Class Action Settlement Approval Process

Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for the approval of class action settlements:

> (1)    Preliminary approval of the proposed settlement after submission to the court of a written motion for preliminary approval;
> (2)    Dissemination of notice of the proposed settlement to the class; and;
> (3)    A formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See* MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 21.632, et seq. (2004).

This procedure safeguards class members' procedural due process rights and enables courts to fulfill their roles as guardians of class interests. *See* 4 NEWBERG ON CLASS ACTIONS, §§ 11.22, et seq. (4th ed. 2012) The Court here completed the first step in the settlement approval process when it granted preliminary approval to the Settlement. (Dkt. No. 71.) As discussed below, the second step has been completed as well: the Court-approved notice plan was fully implemented. By this Motion, Plaintiffs request that the Court take the third and final step: granting final approval of the Settlement so that the Class can immediately obtain the

benefits from this long-suffering litigation.

**B.    The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented**

When a proposed class action settlement is presented for court approval, the Federal Rules of Civil Procedure require the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.   The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The notice plan approved by this Court is commonly used in class actions like this one and constitutes the best notice practicable under the circumstances. The content of the notice complied with the requirements of Rule 23(c)(2)(B).   The notice provided a clear description of who is a Class Member and the binding effects of Class membership. (Declaration of Third-Party Administrator ("TPA Decl."), ¶ 6, Exh. A.)  The notice explained how money from the Settlement would be distributed, how to opt out of the Settlement (including sample language for opting out), how to object to the Settlement, how to obtain copies of papers filed in the case, and how to contact Class Counsel and the Notice Administrator with any further questions or requests. (*Id*.)  The notice also explained that the Settlement itself was filed publicly with the Court and available at the Court.   As a result, every provision of the Settlement was available to each Class member.

The Court approved this notice plan. (Dkt. No. 71.)   The Court ordered Defendant to submit the Class Member information to Rust Consulting, Inc. in a secure manner to and it did so. (TPA Decl., ¶ 7.)  The Court ordered that the Notice

Administrator distribute notice according to the terms of the Settlement.  The Notice Administrator did so.  (TPA Decl., ¶ 9.)

Class Members had information on how to access relevant documents, how to contact the Notice Administrator or Class Counsel, how to opt out of the Settlement, and how to object to the Settlement.  Class Counsel answered Class Member questions and responded to requests.

### C.    Final Approval of the Settlement is Appropriate

The law favors the compromise and settlement of class action suits.  *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982); *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [she] is 'exposed to the litigants and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988), 688 F.2d at 626).  In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (citation and quotations omitted).  All of the relevant factors support final approval of the Settlements here.  "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.  "[T]here is an overriding public interest in settling and quieting litigation" and "[t]his is particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In evaluating a proposed class action settlement, the Ninth Circuit has

recognized that:

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice,* 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

> **1.    The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and Follows Years of Hard-Fought Litigation and Plaintiffs' Thorough Investigation**

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties*." Class Plaintiffs v. City of Seattle*, 955 F.2d at 1290 (9th Cir. 1992) (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)).   "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987). *See also City P'shp. Co. v. Atl. Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Create-A-Card, Inc. v. Intuit Inc.,* No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *8-9 (N.D. Cal. Sept. 22, 2009) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the

product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").

The Settlement here is the product of extensive arm's-length negotiations. All parties were represented throughout these negotiations by counsel experienced in the prosecution, defense, and settlement of complex consumer and employment class actions. (*See* Desai Decl., ¶ 29, Dkt No. 67-1.) The Settlement occurred after a full day of mediation; substantial investigation by Class Counsel; briefing, argument, and discovery battles; litigation over the proper venue for this lawsuit; class certification briefing; and analysis of thousands of pages of employment and payroll document. Of course, there is no hiding that this action comes after a full bench trial and appeal on very similar claims in *Shook v. Indian River Transport, Co.*, Case No. 1:14-cv-01414-WBS-BAM (E.D. Cal); *Shook v Indian River Transport Co.*, No. 17-15322 (9th Cir. 2018). The conduct of the parties in zealously representing their clients' interests reveals that the Settlement is the result of arm's-length discussions with able counsel.

## 2. The Settlement is Fair, Reasonable, and Adequate

The Settlement meets the standard for final approval. As the Court found in preliminarily approving the Settlement, the settlement appears to be "fair, adequate, and reasonable to the Class" and "falls within the range of reasonableness and appears to be presumptively valid." (Dkt. No. 71.) The Court preliminary found the Settlement was the result of arms-length bargaining among experienced counsel. (Dkt. No. 71.) All these factors weight in favor of final approval. The record demonstrates counsel zealously advocating for their clients, resulting in a significant Settlement that the Court should approve. The Plan of Allocation will directly pay each class member a share of the Net Settlement Fund based on the total number of work-weeks worked during the Class Period. Such *pro-rata* shares are common and reasonable in employment cases of this nature. *See, e.g., Ching v. Siemens Industry, Inc.*, No. C 11-4838 MEJ, at *6 (N.D. Cal. Nov. 26, 2013)

(granting preliminary approval of settlement and finding that weeks worked was a reasonable basis for allocating individual payments).

### 3. The Recommendation of Experienced Counsel Favors Approval

The judgment of experienced counsel regarding the Settlement should be given significant weight. *See Linney v. Cellular Alaska P'Ship*, Nos. 96-3008-DLJ, 97-0203-DLJ, 97-0425-DLJ, & 97-0457-DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), aff'd 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980). Class Counsel have extensive experience litigating and settling employment class actions. They have conducted an in-depth investigation into the factual and legal issues raised in this action, and have litigated the case relentlessly for five years. The total endorsement of experienced Counsel supports final approval.

### 4. The Class Response Favors Final Approval

A court may appropriately infer that a class settlement is fair, reasonable, and adequate when few Class members object to it. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class settlement action raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."). Indeed, a court can approve a class action settlement over the objections of a significant percentage of Class members. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) ("A settlement is not unfair simply because a large number or a certain percentage of class members oppose it, as long as it is otherwise fair, adequate, and reasonable"); *Class Plaintiffs v. City of Seattle*, 955 F.2d at 1291-96 (9th Cir. 22. 1992).

Out of 1,920 Class Members, only eight (8) members of the class "opted-out" of the settlement. And not a single class member has objected to either the

settlement of the request for attorney's fees. (TPA Decl., ¶¶ 13-14.)    This is resounding support for the settlement.  This exceptionally low rate of objections and opt-outs are "indicia of approval of the class." *Hughes v. Microsoft Corp.,* 2001 U.S. Dist. LEXIS 5976, *24 (W.D. Wash. Mar. 21, 2001) (finding indicia of approval when nine class members out of 37,155, or just over .02%, who received notice submitted objections, and "less than 1%" opted out); *Sugarman v. Ducati N. Am., Inc*., 2012 U.S. Dist. LEXIS 3961, *8 (N.D. Cal. Jan. 12, 2012) (objections from 42 of 38,774 class member -- more than .1 percent, or more than five times the rate of objection as here -- is a "positive response"); *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class members objected to the settlement (.05 percent), and 500 class members opted out (about .56 percent)). This overwhelmingly positive response from the Class strongly favors Settlement approval.

### D.    Class Representative Service Payments

Class Counsel seeks final approval of reasonable service award payments of $10,000 each for the three Named Plaintiffs (for a total of $30,000) for their services as Class Representatives.  *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").

In determining whether to approve an incentive award, courts may consider the following factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). These factors weigh in favor of granting the incentive payments to the Class

Representatives.

The Class Representatives made important contributions to the prosecution and eventual settlement of this action on behalf of Class members. They shouldered substantial personal risk, including compromising their career in the truck driving industry, and financial liability if defendant prevailed. Even when there is not a record of actual retaliation, Class Representatives still deserve recognition for assuming the risk of retaliation for the sake of absent class members. These concerns are particularly strong in this federal class action, where the Class Representatives are easily verified by a web search and PACER. *See, e.g., Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09-6548, 2012 U.S. Dist. LEXIS 53556, at *41 (S.D.N.Y. April 20, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."). *See also Sewell*, 2012 U.S. Dist. LEXIS 53556, at *42 ("[F]ormer employees . . . fac[ed] [sic] potential risks of being blacklisted as 'problem' employees.").[4]

Plaintiffs also expended significant hours assisting in this litigation. "I spent a couple of days searching for documents related to my employment with IRT but was unable to locate most because most of my paperwork was either boxed away or discarded but I was able to submit: about 70 paystubs, about 13 driver logs, and other documents to my attorneys." (Dec. of Charles Cooley, ¶ 5.) "I work 12-hour shifts and usually only get one day off from work. Despite the difficulty, I took time off because I knew it was important for me to be available for these phone meetings to get critical updates about the case, provide information to my attorneys, and it was also my duty as a Class Representative. (Dec. of Nicholas Marone, ¶ 7.)

---

[4] *Guippone v. BH S&B Holdings, LLC.,*, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, LLC.,* 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

"I was always available and willing to submit declarations whenever needed.  I was always available for telephone meetings with my attorneys even when it was not easy.  Because of my work schedule it was difficult for me to get time off.  I am interstate truck driver 4-5 weeks at a time which makes it difficult to coordinate time off." (Dec. of Anderson, ¶ 7.)

They assisted Class Counsel with investigation; preparing and reviewing the complaint; reviewing drafts of pleadings and other documents; gathering documents and other potential evidence about Defendants and their claims; assisting with various aspects of written and other discovery; discussing the strategy and progress of mediations in the case, participating in regular conversations about the case; and attending the mediation.  Finally, apart from any incentive award, plaintiffs will not gain any benefit beyond what they will gain as a class member. *See also In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member."). This factor weighs in favor of granting an incentive award.

The request for enhancement awards is certainly reasonable.  Courts have approved service payments to current and former employee-class representatives that have far exceeded the modest amount the Class Representatives request here. *Roberts v. Texaco, Inc.* 979 F. Supp. 185, 201 (S.D.N.Y. 1997*)* (authorizing incentive awards ranging up to $85,000 in nationwide employment discrimination class action from a common fund of $115 million); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *73 (S.D.N.Y. Nov. 30, 2010) (granting service payments of $125,000 to each of 26 named plaintiffs); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 service payments to each of four representative plaintiffs); *Beck, et al. v. Boeing Co.*, Case No. 00-CV-0301-MJP, Dkt. 1067 at 4 (W.D. Wash

1  Oct. 8, 2004) (awarding $100,000 service payments to each of the named
2  plaintiffs).

3      The proposed awards also reflect their "public service of contributing to the
4  enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n.65.    Plaintiffs
5  obtained significant PAGA penalties ($1,000,000) and compensation for
6  Defendant's current and former employees.  They are asking for less than 2.2% of
7  the proposed settlement fund.  *See, e.g., Novartis Pharms.,* No. 04 Civ. 09194
8  (CM), 2010 U.S. Dist. LEXIS 125945, at *22-23 (affirming $3.775 million in in
9  service award payments in part because it represented only 2.4 percent of the entire
10 monetary award of $152.5 million).  This is imminently reasonable and modest.

11     **E.    Class Counsel Is Entitled to Reasonable Fees Under the Lodestar**
12         **and Percentage of the Fund Methods**

13     As laid out in Plaintiffs' Motion for Preliminary Approval, Class Counsel is
14 entitled to reasonable attorneys' fees to compensate them for their work on behalf
15 of the Class.   The Court-approved Notice informed Class Members of Class
16 Counsel's intent to seek attorneys' fees.  The law is clear that "a lawyer who
17 recovers a common fund for the benefit of persons other than himself or his client is
18 entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*
19 *Gemert*, 444 U.S. 472, 478 (1980).  The purpose of this doctrine is that "those who
20 benefit from the creation of the fund should share the wealth with the lawyers
21 whose skill and effort helped create it."  *In re Washington Pub. Power Supply Sys.*
22 *Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

23     In the Ninth Circuit, the district court has discretion in a common fund case
24 to choose either the "percentage-of-the-fund" or the "lodestar" method in
25 calculating fees. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th
26 Cir. 2002; *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1123-24 & n.9 (9th Cir.
27 2002); *Vizcaino v. Microsoft Corp.*, 290 F.3d at 1047 (9th Cir. 2002); *WPPSS*, 19
28 F.3d at 1296.  Plaintiffs bring various state law claims, and under California law

"[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003). The Court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The Ninth Circuit recommends that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011).

In light of the Court's concerns regarding Plaintiffs combined lodestar,[5] Plaintiffs' analyze the below factors using <u>only</u> the lodestar in *Cooley*, and an adjusted, lower hourly rate.

### 1. Class Counsel's Request for Fees Is Reasonable Under the Lodestar Method

Under the lodestar method, (California's "primary method" for calculating fees) Class Counsel's request for fees is eminently reasonable. The lodestar method here is simply a cross-check regarding the reasonableness of the attorneys' fees requested. The starting point for calculation of a reasonable fee under this method is the "lodestar," which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services"); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (using "initial estimate" language and noting, "[a]djustments to that [lodestar] fee then may be made as necessary in the particular case"); *Blanchard v. Bergeron*, 489 U.S. 87, 94-95 (1989).

---

[5] Plaintiffs respectfully continue to assert that the combining the lodestar for this case and the *Shook* trial for the Court's consideration is appropriate here. The basis of this case and the ultimate foundation of this settlement was the result of information gained from the *Shook* trial. The heart of Plaintiffs' claims in this lawsuit are the failure to pay for sleeper berth time and the failure of IRT to inform and advise its drivers of their right to take meal and rest breaks under California law. Plaintiffs asserted these actions only because they learned about these facts form the *Shook* trial.

In this case, based on Class Counsel's hourly rates, Class Counsel has invested a lodestar of approximately $392,730 based on a total of 553 hours of work. (Desai Decl. ¶ 8.) However, the Court expressed concerns regarding Class Counsel's hourly rates of $850 per hour for Aashish Desai, $550 per hour for Adrianne De Castro, and $250 per hour for Sonia Nava. Class Counsel's rates are commensurate with other wage and hour class action practitioners in the surrounding areas in Orange County, and in the Eastern District. As the Court well knows, the case was largely litigated in Orange County, and was only transferred in the last few months before it settled. Thus, the appropriate market rate is that of lawyers in Orange County. See *Aguirre v. Genesis Logistics, et al.*, Case No. SACV 12-00687-JVS-ANx (C.D. Cal. April 7, 2014) (noting, on disputed motion, the rate of $750 for Aashish Desai was reasonable for the Orange County area).

However, even looking to the market rate of highly experience attorneys litigating wage and hour cases in the Eastern District, Class Counsel's hourly rates are reasonable. Plaintiffs have submitted two supporting declarations of attorneys specializing in this area of the law who confirm that these rates are justified and well within the range of reasonableness. Plaintiffs have submitted the supporting declarations of Chris Whelan, a Sacramento Plaintiff-side employment practitioner for over 40 years, whose hourly rate is $750.00 per hour; and Scot Bernstein, a practitioner for 38 years who has been handling employee-side class actions since 1999, and whose hourly rate is $875 per hour. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990).

The Court in its preliminary approval order noted that the proper rate for attorneys in the area is $350.00 - $400.00 per hour. The Court cited *Leprino Foods Co. v. JND Thomas, Co., Inc.* 2017 WL 128502 at *13 (E.D. Cal. Jan. 12, 2017) in

support of this rate.  However, *Leprino* is not a proper benchmark for the hourly rate here.  To begin, *Leprino* was a not a wage and hour class action and involved two corporations alleging entirely different claims of breach of contract, declaratory relief, and negligence.  Moreover, *Leprino* cites several dissimilar cases in support its $400 hourly rate.  *Cf. Sanchez v. Frito-Lay, Inc.*, No. 1:14-CV-00797 AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015)(wage and hour case reflecting **rates for 2015**); *Willis v. City of Fresno*, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) (**Section 1983 Civil Rights Act** case); *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1169 (E.D. Cal. 2011) (**individual** employment case); *Silvester v. Harris*, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014)(**individual civil right**s, Second Amendment case); *Verduzco v. Ford Motor Co*., No. 1:13-CV-01437-LJO, 2015 WL 4131384, at *4 (E.D. Cal. July 9, 2015)(**individual motor vehicle/product liability case**).  To put it simply, *Leprino* does not provide an adequate basis for a $400 hourly rate.

Class Counsel recognizes the Court's concerns that a lower hourly rate may be appropriate here.  Thus, Plaintiffs propose the Court look to Judge Mueller's Order Finally Approving a Class Action Settlement in *Rodriguez, et al. v. Penske Logistics, LLC.,* Case No. 2:14-cv-02061-KJM-CKD, Attached to the Desai Decl., Exh. C.  In *Penske,* Judge Mueller used a range of $540 to $695 per hour for Aashish Desai, $450 per hour for Adrianne De Castro, and $150-180 per hour for paralegals as the prevailing rate.  *Id.* at 21 citing *See, e.g.*, *Ogbuehi v. Comcast of Cal./Colo./Fla./ Or., Inc.*, No. 2:13-cv-00672-KJM-KJN, 2015 WL 3622999, at *12 (E.D. Cal. June 9, 2015) (calculating lodestar amount using hourly rates of $650 for an attorney with nineteen years' experience, $175 for a paralegal with six years' experience, and $150 for a paralegal with two years' experience); *Zakskorn v. Am. Honda Motor Co.*, No. 2:11-cv-02610-KJM-KJN, 2015 WL 3622990, at *15 n.4 (E.D. Cal. June 9, 2015) (calculating lodestar amount using hourly rates of $540–

$695 for partners, $300–$490 for associates, and $180 for paralegals and multiplying by individual attorney's hours as represented in their respective declarations).

In calculating their lodestar here, Class Counsel used the same ranges. The lodestar amount was calculated using a range of $540 to $695 per hour for Aashish Desai, $450 per hour for Adrianne De Castro, and $150 to $180 per hour for paralegals as the prevailing local rate. Thus, the approximate lodestar in this case is in the range of $259,347 - $319,278. Using the middle of this range, Plaintiffs' lodestar is **$289,312** based on 553 hours of work.

The lodestar of $289,312 is supported by Class Counsel's detailed, contemporaneous time records documenting the time they spent on this case. Thus, the requested attorneys' fees of $462,000 represents only a 1.6 multiplier that is well within the range of factors acceptable under Ninth circuit precedent. In fact, in the *Penske* matter, Judge Mueller applied a 1.32 multiplier, which the Court noted was well within the range of multipliers accepted by the Ninth Circuit. *See Id.* at 21, citing *Vizcaino II,* 290 F.3d at 1050-1051 n.6 (reviewing approved fees from twenty-four cases finding twenty twenty-four fell within the **1.0-4.0** range, and thirteen of twenty-four fell within the **1.5-3.0** range). As established in the *Bluetooth* case, the lodestar may be increased or decreased by the multiplier that reflects factors not subsumed within the calculation, such as the "quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of non-payment." *See In Re Bluetooth Headset Prod. Liab. Liti.,* 654 F.3d 935, 942 (9th Cir. 2011). "Foremost among these considerations, however, is the benefit obtained by the class." *Id.* At 942. Here, a multiplier is supported by the following facts.

> *a. Class Counsel Obtained Excellent Results for the Class in Light of the Burdens of the Litigation*

After intense litigation, Class Counsel secured a settlement totaling $1.4

million for the benefit of the Class.  The Settlement Fund does not require Class Members to make a claim, submit payroll or paystub records, or verify any information.  Instead, Class Members, who did not opt out, will receive, on average, $450.14.  This is real money without complication and will certainly benefit the Class in the most direct manner possible.

The absence of objectors provides additional support for approval of our fee request.  *In re Heritage Bond Litig.*, No. 02-MIL-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the request reasonable.").

> b. *Class Counsel Assumed Significant Risks In Light of the Complexity of the Legal and Factual Issues in this Case*

Class Counsel assumed significant risk in taking on this case, particularly in light of the fluctuating and changing law on piece-rate compensation plans and FAAAA preemption.  Counsel faced the real possibility that they would not be paid for any of their services since this case was litigated on a wholly contingent basis.  (Desai Decl., ¶ 6.)  In addition, Class Counsel faced attacks from the start of the litigation from requests for transfer, to requests to relate the case, and discovery battles.

Just in the last few months, Class Counsel faced still increasing risks of non-payment.  Per Defendant's request, Class Counsel expended additional time and effort to renegotiate an amendment to Settlement Agreement.  Class Counsel had to conduct research on the best procedural mechanism to do this since the Court had already granted preliminary approval of the Settlement.  Then Class Counsel had to review and analyze the proposed Stipulation and Order reflecting the amendment to the Settlement Agreement.  The Stipulation which the Court approved (Dkt. No. 67-2) sets forth installment payments into the Settlement Fund that delays payment to the Class and to Class Counsel by several months.  Thus, if the Court finally

approves the settlement, the Class and Class Counsel will not be paid until close to the end of the year.  Obviously, this delayed payment exposes Class Counsel to additional risk of non-payment.  Moreover, the protracted payout requires Class Counsel to expend additional time and resources to field class member inquiries and monitor and enforce the settlement.  (Desai Decl., ¶ 6.)

Class Counsel also faced the risk of an Objector to the Settlement.  In March, Class Counsel received a call from an attorney in Washington litigating a wage and hour class action on behalf of Washington IRT drivers.  One of the putative class members in the Washington case received a class notice, likely based on some of the driving work he performed in California.  As a result of this potential issue, Class Counsel has to expend time and resources in researching the issue, communicating with Defense Counsel and negotiating with Washington Counsel.  Pursuant to these negotiations and additional oversight, Class Counsel has been informed that a settlement was reached to resolve the Washington litigation.  (Desai Decl., ¶ 7.)

All of these challenges increased Class Counsel's risk that they would not see a fee of any kind despite their work in this case.  Indeed, since the inception of the case in May 2017 Class Counsel has not been paid one penny and will not be paid until close to the end of the year, over 2 years later.  This factor easily supports an upward adjustment of fees.

### c.  Counsel's Skill and Experience

Class Counsel used their substantial experience and skill prosecuting large-scale complex employment and consumer class actions to negotiate and successfully settle this case.  The existence of a possible objector in the case required additional negotiation and investigation.

All of these factors support a positive multiplier of 1.6 within the range accepted by the Ninth Circuit.  *See Vizcaino,* 290 F.3d at 1050 ("the lodestar calculation can be helpful in suggesting a higher percentage when litigation has

1  been protracted.").

2  ### 2. Class Counsel's Request for Attorneys' Fees is Reasonable under the Percentage of the Fee Analysis

3

4  Class Counsel's request for fees here, while not regulated by federal law, is

5  in line with the percentages awarded plaintiffs' counsel in other major employment

6  cases.[6] *See Vizcaino*, 290 F.3d at 1050 (noting that "market rates" are a question of

7  "lawyers' reasonable expectations, which are based on the circumstances of the

8  case and the range of fee awards out of common funds of comparable size.").

9  Furthermore, courts within the Ninth Circuit have similarly awarded fees in various

10  types of complex litigation.[7]  While 25% of the fee award is a benchmark in the

11  Ninth Circuit, the requested percentage (33%) is similar to percentage-based awards

12  obtained through settlement in other wage-and-hour actions in the Eastern District:

13  (1) *Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–01662– OWW–MJS,
14  Docket No. 59 (E.D. Cal. June 30, 2011) (court approved attorney's fees
   in the amount of 30% of the common fund);

15  (2) *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)
16  (wage-and-hour action putative class-action settlement where court
   approved award of attorney's fees in the amount of 33.3% of the common
17  fund);

18  (3) *Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal.,
19  Dec. 15, 2009) (awarding 33.3% of the benefit to the class in attorney's
20  fees);

21  (4) *Chavez v. Petrissans*, No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D.
22  Cal. Dec. 15, 2009) (court approved awards of attorney's fees of 33.3% of
   the common fund);

23  ─────────────────────────

24  [6] *See, e.g., Vedachalam v. Tata Consultancy Servs. Ltd.*, No. 06-0963, 2013 U.S.
Dist. LEXIS 100796, at *1-2 and 10 (N.D. Cal. July 18, 2013 (awarding 30% of
25  settlement fund in an employment class action); *Meijer v. Abbott Laboratories,* No.
07-05985 (N.D. Cal. Aug. 11, 2011) (33 1/3%).
26  [7] *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming
fee award equal to 33% of fund); *Hernandez v. Kovacevich "5" Farms*, No. 04-cv-
5515, 2005 U.S. Dist. LEXIS 48605, at *25-31 (E.D. Cal. September 30, 2005)
27  (33.3% of the $2.52 million settlement in an employment class action); *Linney v.
Cellular Alaska P'ship*, No. 96-3008, 1997 U.S. Dist. LEXIS 24300, *20 (N.D. Cal.
28  Jul. 18, 1997) (33.3% fee); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375
(N.D. Cal. 1989) (32.8% fee) (decided after *Paul, Johnson*).

(5) *Romero v. Producers Dairy Foods, Inc*., No. 1:05–cv–0484– DLB, 2007 WL 3492841, at * 4 (E.D. Cal. Nov.14, 2007) (class action settlement where court approved attorney's fees in the amount of 33% of common fund);

(6) *Vasquez v. Jim Aartman, Inc*., No. 1:02–cv–05624–AWI–LJO, Doc. No. 130 (E.D. Cal. Sept. 16, 2005) (class action settlement where court approved attorney's fees in the amount of 30% of the settlement amount);

(7) *Baganha v. Cal. Milk Transp.*, No. 1:01–cv–05729–AWI– LJO, Doc. No. 147 (E.D. Cal. July 22, 2004) (class action settlement where court approved attorney's fees in the amount of 31.25% of settlement amount);

(8) *Randall Willis et al. v. Cal. Western Transp.* and *Earl Baron, et al. v. Cal Western Transp.* (consolidated cases), No. 1:00–cv– 05695–AWI–LJO, Doc. No. 225 (E.D. Cal. Aug. 20, 2003) (court approved attorney's fees in the amount of 33.3% of the settlement amount); and

(9) *Schiller v. David's Bridal, Inc*., 2012 U.S. Dist. LEXIS 80776 at *19 (court approved attorney's fees in the amount of approximately 32% of total settlement amount).

Although California state law applies, the fees requested here -- approximately one-third of the Settlement Fund -- are also within the range of reasonableness established by Ninth Circuit authority.  *See, e.g., Knight v. Red Door Salons, Inc*., No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) (observing that class action fee awards average around one-third of the recovery); *Miller v. CEVA Logistics USA, Inc*., No. 2:13-CV-01321-TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) (noting that California district courts routinely award attorneys' fees in the range of 30-40% in class actions that result in the recovery of a common fund under $10 million).  This slight upward adjustment is appropriate in light of the excellent results achieved for the Class, the continued risks Class Counsel faces under the amended Settlement Agreement which sets forth a protracted payment schedule, and a possible objector.

**F.    Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement**

Class Counsel request reimbursement of expenses in the amount of $10,000 to be paid from the Settlement Funds.  In light of the Court's concerns, Class Counsel is not requesting costs for the *Shook* trial.  (Desai Decl., ¶ 4.)  "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client."  *Ross v. Bar None Enters., Inc.*, No. 2:13-cv-00234, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks and citation omitted).  Here, Plaintiffs' costs were all necessary to litigate this case (court reporters for depositions; court and process server fees; postage and courier fees; mediator's fees; photocopies; and case-related travel after it was transferred to the Eastern District).  These are reasonable and standard expenses.  *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 454 (2013) (costs associated with travel and photocopying as well as mediation fees are "routinely reimbursed"); *Fontes v. Heritage Operating, L.P.*, No. 14-cv-1413- MMA (NLS), 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving class counsel's costs, which included "court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses").

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval to the Settlement and award: (1) attorneys' fees to Class Counsel in the amount of $462,000; (2) reimbursement of $10,000 in expenses that Class Counsel necessarily incurred; and (3) a service awards of $10,000 each (for a total of $30,000) for the Court-appointed Class Representatives.

Respectfully submitted,

Dated:   April 8, 2019                     DESAI LAW FIRM, P.C.

By:_____*/s/ Aashish Y. Desai*_____
      Aashish Y. Desai
      Adrianne De Castro
      Attorneys for Plaintiffs