UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CHARLES W. COOLEY, GRADY
ANDERSON, and NICHOLAS MARONE on
behalf of themselves and all
others similarly situated,

                    Plaintiffs

          v.

INDIAN RIVER TRANSPORT CO., a
Florida Corporation, and DOES 1-
10, inclusive,

                    Defendant.

No. 1:18-cv-00491


ORDER AND MEMORANDUM RE:
FINAL APPROVAL OF CLASS
SETTLEMENT

----oo0oo----

          Plaintiffs Charles W. Cooley, Grady Anderson, and

Nicholas Marone were formerly employed by Indian River Transport

Co. ("Indian River") as truck drivers.  (First Am. Compl. ("FAC")

¶¶ 1-3 (Docket No. 55).)  They brought this putative class action

on behalf of themselves and similarly aggrieved employees.  They

allege that Indian River committed various violations of

California law[1] by failing to inform its drivers they were entitled to paid meal or rest breaks, not compensating them for rest breaks and other time they were working but not driving, and by providing them with wage statements that did not include all the information required by the Labor Code. (Id. ¶¶ 7-9.)

The parties reached a settlement which would resolve plaintiffs' claims against defendant, and the court previously granted preliminary approval of that settlement. (Docket No. 71.) Plaintiffs now move for final approval of the settlement pursuant to Federal Rule of Civil Procedure 23(e).

I.    Factual and Procedural Background

Defendant Indian River is a food-grade tank carrier providing transportation throughout the United States; though defendant's headquarters are in Florida, it has a facility, clients, and employee drivers in California. (FAC ¶ 4.) At varying points between September 2011 and October 2017, plaintiffs were employed by defendants to drive routes in and through California. (Id. ¶¶ 1-3.) The claims asserted in the complaint arise out of plaintiffs' work for defendant and concern defendants' alleged pay and wage statement practices.[2]

_____

[1]    Specifically, plaintiffs allege violations of California Labor Code §§ 226 & 512; 226.7; 1194; and 200-03. Plaintiffs also allege violations of California Business and Professions Code Section 17200, et seq.

[2]    These claims are substantively very similar to those brought by former Indian River truck drivers Todd Shook and Herschel Berringer. See Shook v. Indian River Transp. Co., 236 F. Supp. 3d 1165 (E.D. Cal. 2017), aff'd, 716 F. App'x 589 (9th Cir. 2018). Following a bench trial, the district court entered a judgment for defendants in that case. The court ruled that plaintiffs' claims were barred because Indian River had made Safe Harbor payments under California Labor Code § 226.2, and therefore had an affirmative defense to allegations regarding its failure to properly compensate its employees for rest periods and

2

Plaintiffs filed this case in May 2017 in Orange County Superior Court. Defendant removed the case to the United States District Court for the Central District of California (Docket No. 3) and then, in March 2018, the case was transferred to this district (Docket No. 2). Plaintiffs filed a first amended complaint in June 2018 (Docket No. 55) and, in September 2018, the parties engaged in a full-day mediation in Irvine, CA. By the end of the day, the parties had reached an agreement and executed a memorandum of understanding codifying their intention to settle all claims of plaintiffs and the putative class against defendant for $1.4 million. (Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement at 3-4 (Docket No. 67).)

In its order granting preliminary approval of a class and class settlement, the court provisionally certified the following class: "all persons who were employed by Indian River Transport Co. as a truck driver at any time during the period from April 7, 2013 through January 23, 2019, and performed work for Indian River for at least one full day in the State of California at any time." (Order re: Preliminary Approval of Class Settlement at 24 (Docket No. 71).) The court appointed Charles W. Cooley, Grady Anderson, and Nicholas Marone as class representatives, the Desai Law Firm as class counsel, and Rust Consulting, Inc. ("Rust") as settlement administrator. (Id.) The court also approved the notice of settlement and final approval

other breaks in the period between July 1, 2012 and December 31, 2015. Id. at 1175. Since neither plaintiff had worked for Indian River during the post-Safe Harbor period, i.e. after January 1, 2016, their claims against Indian River were barred. Id.

3

hearing and opt-out form.  The court set the final fairness

hearing for May 6, 2019.  (Id. at 25.)  It directed class counsel

to file with the court, within twenty-eight days of the fairness

hearing, a petition for an award of attorney's fees and costs;

all papers in support of the settlement, incentive award, fees,

and costs; and a declaration from the settlement administrator

setting forth the services rendered, proof of mailing, and a list

of all class members who have commented upon or objected to the

settlement.  (Id. at 24-25.)

After conducting the final fairness hearing and

carefully considering the terms of the settlement, the court now

addresses whether this class should receive final certification;

whether the proposed settlement is fair, reasonable, and

adequate; and whether class counsel's request for attorneys' fees

and costs, as well as enhancement awards for the representative

plaintiffs, should be granted.

II.  Discussion

Judicial policy strongly favors settlement of class

actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268,

1276 (9th Cir. 1992).  "To vindicate the settlement of such

serious claims, however, judges have the responsibility of

ensuring fairness to all members of the class presented for

certification."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th

Cir. 2003).

There are two stages to a court's approval of a

proposed class action settlement.  In the first phase, the court

temporarily certifies a class, authorizes notice to that class,

and preliminarily approves the settlement, with final approval

contingent on the outcome of a fairness hearing. <u>Ontiveros v.</u>
<u>Zamora</u>, No. 2:08-567-WBS-DAD, 2014 WL 3057506, at *2 (E.D. Cal.
July 7, 2014.)  If a court, as it did in this case, determines
that a proposed class action settlement deserves preliminary
approval, then notice of the action is given to the class
members.

        In the second phase, the court holds a fairness hearing
and entertains class members' objections to both the suitability
of the class action as a vehicle for this litigation and the
terms of the settlement.  <u>See</u> <u>Murillo v. Pac. Gas & Elec. Co.</u>,
266 F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  Following the
fairness hearing, the court makes a final determination regarding
whether the parties should be allowed to settle the class action
pursuant to the agreed upon terms.  <u>See</u>  <u>Mora v. Cal W. Ag</u>
<u>Servs., Inc.</u>, No. 1:15-CV-1490 LJO EPG, 2018 WL 3201764, at *3
(E.D. Cal. June 28, 2018), <u>report and recommendation adopted</u>, No.
1:15-CV-1490 LJO EPG, 2018 WL 4027017 (E.D. Cal. Aug. 22,
2018)("Following the fairness hearing, taking into account all of
the information before the court, the court must confirm that
class certification is appropriate, and that the settlement is
fair, reasonable, and adequate.").

        Having previously preliminarily certified the proposed
class and approved the proposed settlement, the court now makes a
final determination as to whether the class should be certified
and as to whether the parties should be allowed to settle the
class action pursuant to the terms agreed upon.

        A.   <u>Class Certification</u>

            To be certified, the putative class must satisfy both

the requirements of Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") and Federal Rule of Civil Procedure 23(b)("Rule 23(b)"). See Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). In the settlement context, the court's careful scrutiny of the extent to which the putative class complies with the requirements of Rules 23(a) and 23(b) is especially important since the court will "lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997).

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation, respectively. See Leyva, 716 F.3d at 512. While the court must evaluate Rule 23(a)'s requirements independently, they serve a common purpose of "ensur[ing] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011).

In the court's order granting preliminary approval of the settlement, the court found that the putative class satisfied the numerosity, commonality, and typicality requirements of 23(a). However, the court expressed some concerns about the adequacy of representation. The court is unaware of any changes

that would alter its analysis as to numerosity, typicality, or commonality, and because the parties did not indicate at the fairness hearing that they were aware of any such developments, the court finds these requirements satisfied. The court will thus focus its Rule 23(a) analysis on evaluating adequacy of representation for purposes of final certification.

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

Although the Ninth Circuit has specifically approved the award of "reasonable incentive payments" to named plaintiffs, the use of an incentive award nonetheless raises the possibility that a plaintiff's interest in receiving that award will cause his interests to diverge from the class's interest in a fair settlement. See Staton, 327 F.3d at 977-78. In the order preliminarily approving the proposed settlement, the court expressed concern that the requested $10,000 incentive awards for class representatives were disproportionately large relative to the average class member's recovery of $374. (Order Re: Preliminary Approval at 9-11.) Though the final average individual payment of $450.14 is somewhat larger than the projected average recovery, it is still approximately just one-twentieth of the requested incentive rewards.

Plaintiffs Cooley, Anderson, and Marone each submitted a declaration in support of Plaintiffs' Motion for Final

approval. (Docket No. 77-8.)  These declarations lay out, in moderate detail, each named plaintiff's contributions to the class.  Plaintiff Cooley declares that he spent between 175 and 200 hours assisting his attorneys in the prosecution of this matter.  (Cooley Decl. ¶ 11)  He participated in discovery, attended in person and telephonic meetings with plaintiffs' counsel, and participated in mediation.  (Id. ¶¶ 5, 7, 10.) Plaintiffs Anderson and Marone both estimate that they spent between 55 and 75 hours assisting class counsel with the prosecution of this case (Anderson Decl. ¶ 9; Marone Decl. ¶ 9). Like Plaintiff Cooley, their contributions encompassed submitting declarations when requested, participating in discovery, and regularly conferring with class counsel. (Anderson Decl. ¶¶ 5, 7; Marone Decl. ¶¶ 5, 7).

        The court is satisfied with the evidence of plaintiffs' substantial efforts taken as class representatives.  In light of plaintiffs' contributions to the prosecution of this action, the court finds that the requested $10,000 incentive awards are reasonable and will not impair the alignment of plaintiffs' interests and those of the class.

        Because the order granting preliminary approval also found the second step of the adequacy analysis satisfied (Order Re: Preliminary Approval at 11), and nothing has come to the court's attention that would change its analysis, the court determines that plaintiffs are adequate class representatives.

        An action that meets all the prerequisites of Rule 23(a) may only be certified as a class action if it also satisfies the requirements of one of the three subdivisions of

Rule 23(b).  Leyva, 716 F.3d at 512.  Plaintiffs seek
certification under Rule 23(b)(3), which provides that a class
action may be maintained only if (1) "the court finds that
questions of law or fact common to class members predominate over
questions affecting only individual members" and (2) "that a
class action is superior to other available methods for fairly
and efficiently adjudicating the controversy."  Fed. R. Civ. P.
23(b)(3).

In its order granting preliminary approval of the
settlement, the court found that both prerequisites of Rule
23(b)(3) were satisfied.  (Order Re: Preliminary Approval at 12-
14.)  The court is unaware of any changes that would affect this
conclusion.

Having determined that the proposed class satisfies the
requirements of both Federal Rule of Civil Procedure 23(a) and
Federal Rule of Civil Procedure 23(b), the court will grant final
certification to the proposed class.

B.    Rule 23(c)(2) Notice Requirements

If the court certifies a class under Rule 23(b)(3), it
"must direct to class members the best notice that is practicable
under the circumstances, including individual notice to all
members who can be identified through reasonable effort."  Fed.
R. Civ. P. 23(c)(2)(B).  Actual notice is not required.  Silber
v. Mabon, 18 F.3d 1449 (9th Cir. 1994).  The notice provided to
absent class members, however, must be "reasonably certain to
inform the absent members of the plaintiff class".  Id. at 1454
(quoting In re Victor Techs. Sec. Litig., 792 F.2d 862, 865 (9th
Cir. 1986).)

9

As provided by the Settlement Agreement, the settlement administrator, Rust, mailed notice of the settlement to the last known address of all class members. (Schwartz Decl. ¶ 9 (Docket No. 77-9).)  Rust used the National Change of Address Database to update the class list.  (See id. ¶ 8.)  If a class member's notice packet was returned as undeliverable without a forwarding address, Rust performed an address trace.  (Id. ¶ 10.) Ultimately, only 37 notices of 1,920 were undeliverable because Rust was unable to find a correct address.  (Id.)  The court is satisfied that this system of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances.

Likewise, the notice itself clearly identified the options available to putative class members -- do nothing, dispute, or opt out -- and comprehensively explained the nature and mechanics of the settlement.  (See Schwartz Decl. Ex. A.) The content of the notice is therefore sufficient to satisfy Rule 23(c)(2)(B).  See Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting Mendoza v. Tucson Sch. Dist. No. 1., 623 F.2d 1338, 1352 (9th Cir. 1980))).

    C.   Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

Having determined that the proposed class satisfies the requirements of Rule 23, the court will now examine whether the terms of the parties' settlement appear fair, adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  This process requires

the court to "balance a number of factors," including:

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026.  The court will address each in turn

       1.   Strength of Plaintiff's Case

An important consideration is the strength of plaintiff's case on the merits compared to the settlement amount offered.  DIRECTV, 221 F.R.D. at 526.  The court, however, is not required to reach an ultimate conclusion of the merits, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements."  Officers for Justice v. Civ. Serv. Comm'n of City & Cty of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

Plaintiffs allege claims under the California Labor Code and California's Unfair Competition Law arising out of their employment as truck drivers who work, or worked, for defendant Indian River in the State of California.  Specifically, plaintiffs claim that they were not separately compensated for breaks and non-driving work and that they were not issued accurate wage statements.  If this case were to proceed to trial, defendant would likely argue that plaintiffs' claims are barred by res judicata.  (Mot. for Preliminary Approval at 11 (Docket No. 7).)

In comparing the strength of plaintiff's case with the

11

proposed settlement, the court finds that the proposed settlement

is a fair resolution of the issues in this case.

2.    Risk, Expense, Complexity, and Likely Duration of
      Further Litigation

Further litigation could greatly delay resolution of

this case and increase expenses.  Prior to any judgment, the

parties would have had to litigate class certification, which

would have required additional discovery, time, and expense.

Appeals are also likely in this case and create additional

uncertainty and delay.  (Id. at 12.)  These factors weigh in

favor of settlement of the action.

3.    Risk of Maintaining Class Action Status Throughout
      Trial

The court is unaware of any specific difficulty in

maintaining class-action status in this case were the matter to

continue to trial.  Although plaintiff's counsel describes a

"very real risk that the case would not be certified" (Desai

Decl. P 25 (Docket No. 67-1), he does not reference any specific

future development that could upset certification.  Accordingly,

the court will not consider this factor in its analysis. See In

re Veritas Software Corp. Sec. Litig., No. 03-0283, 2005 WL

3096079, at *5 (N.D. Cal. Nov.15, 2005) (favoring neither

approval nor disapproval of settlement where the court was

"unaware of any risk involved in maintaining class action

status"), aff'd in relevant part, 496 F.3d 962 (9th Cir. 2007).

4.    Amount Offered in Settlement

In determining whether a settlement agreement is

substantively fair to class members, the court must balance the

value of expected recovery against the value of the settlement

offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d

1078, 1080 (N.D. Cal. 2007). This inquiry may involve
consideration of the uncertainty class members would face if the
case were litigated to trial. See Ontiveros, 2014 WL 3057506, at
*14. Plaintiffs' counsel estimates defendant's total exposure at
over $12,000,000. (Desai Decl. ¶ 25.) This estimate is based
upon the defendant's Notice of Removal (Docket No. 3), which
stated the amounts in controversy for plaintiff's causes of
action as follows: (1) $2,663,250 for failure to advise employees
of right to take meal breaks; (2) $2,663,250 for failure to
advise employees of right to take rest breaks; (3) $3,309,026 for
failure to pay all wages for sleeper berth time (for the
California resident class only); and (4) $3,960,504 for waiting
time penalties. (Notice of Removal ¶ 40.)

        The proposed gross settlement amount of $1.4 million is
just over 11% of the estimated potential recovery in this case.
Class counsel represents that the $12 million pretrial recovery
does not account for the delay of litigation; the risk that the
class may not be certified; or the possibility that some claims
may fail. (Desai Decl. ¶ 25.) Though this settlement represents
far less than the plaintiffs could have potentially secured had
the case gone to trial, it is not plainly deficient. See
Officers for Justice, 688 F.2d at 628 ("It is well-settled law
that a cash settlement amounting to only a fraction of the
potential recovery will not per se render the settlement
inadequate or unfair.") Thus, in light of the risks and expense
of further litigation in this matter, the court finds the
settlement amount to be fair and adequate.

        5.    Extent of Discovery and the State of Proceedings

This matter was initially filed in state court and then removed to the United States District Court for the Central District. (Mot for Prelim. Approval at 3.) There, Judge Carter issued a scheduling order setting out discovery deadlines. (Docket No. 22.) Plaintiffs then filed a Motion for Class Certification. (Docket No. 33.) Adjudication of that motion was stayed pending the resolution of a Motion to Change Venue filed by defendant Indian River Transport. (Docket No. 39.) Though plaintiffs opposed defendant's Motion to Transfer Venue, defendant prevailed, and the case was transferred to the Eastern District of California. (Docket No. 41.)

The parties engaged in a full day of mediation before Judge Gail Andler (Ret.) in Irvine, CA and ultimately reached a settlement before discovery or motion deadlines were set by this court. (See Docket Nos. 59 & 62.) This relatively early settlement was facilitated by the parties previous participation in Shook v. Indian River Transport Co., No. 1:14-CV-1415 WBS BAM, a related case which culminated in a two-day bench trial and an appeal to the Ninth Circuit. (See Desai Decl. ¶ 9.) Thus, although this factor is not essential to the settlement of a class action, see Lachance v. Harrington, 965 F. Supp. 630, 644–45 (E.D. Pa. 1997), the court finds that, on balance, it weighs slightly in favor of settlement in this case.

6. Experience and Views of Counsel

Plaintiff's counsel has extensive experience litigating class actions, including those involving employment law and wage and hour enforcement. (Desai Decl. ¶¶ 11-12 (Docket No. 67-1).) Based on his experience, plaintiff's counsel believes the

proposed settlement is fair, reasonable, and adequate to the class members. (Mot. for Final Approval at 12.)  The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation.  Alberto v. GMRI, Inc., No. CIV 07-1895 WBS DAD, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008).  This factor thus supports approval of the settlement agreement.

       7.   Presence of Government Participant

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the court's analysis.

       8.   Reaction of the Class Members to the Proposed Settlement

Notice of the settlement was sent to 1,920 class members and only eight class members submitted requests for exclusion prior to the March 25, 2019 deadline. (Schwartz Decl. ¶ 13.)  No class members have objected. (Id. ¶ 14.) "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." DIRECTV, 221 F.R.D. at 529.  Accordingly, this factor weighs in favor of the court's approval of the settlement.

Having considered the foregoing factors, the court finds the settlement is fair, adequate, and reasonable pursuant to Rule 23(e).

   D.   Attorney's Fees and Costs

If a negotiated class action settlement includes an award of attorney's fees, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself,

15

is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

When, as in the instant case, a federal court sits in diversity, state law governs the right to fees as well as the calculation of fees. See Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470 (9th Cir. 1995). In California, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund." Serrano v. Priest, 20 Cal. 3d 25, 34 (1977).

California courts calculating a reasonable award of attorneys' fees may do so either by taking a percentage of the benefit secured for the class, or by using a lodestar. Richardson v. THD At-Home Servs., Inc., No. 1:14-CV-0273-BAM, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016). However, there is no "definitive set of factors that California courts mandate or endorse for determining the reasonableness of attorneys' fees in the context of a common-fund percentage-of-the-benefit approach." Id. Accordingly, this court will turn to Ninth Circuit case law on the reasonableness of attorneys' fee awards in evaluating plaintiffs' counsel's request. See id.

Given that the percentage method is particularly appropriate in common fund cases where "the benefit to the class is easily quantified," Bluetooth, 654 F.3d at 942, this court will use the percentage method in evaluating plaintiffs' counsel's requested fees. The Ninth Circuit has approved a

"benchmark" percentage of 25%, and courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." Id. (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). In evaluating whether a percentage fee award is reasonable, the court may consider factors such as, inter alia, the results secured for the class, awards in similar cases, and the degree of risk assumed by counsel. Romero v. Producers Dairy Foods, Inc., No. 1:05-CV00484 DLB, 2007 WL 3492841, at *3 (E.D. Cal. Nov. 14, 2007). Courts evaluating the reasonableness of an attorney fee award have also considered the presence, or absence, of objections to the award from class members. See In re Heritage Bond Litig., No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable.")

The total settlement in this case is $1,400,000. Applying the 25% benchmark, the percentage of recovery method would justify a fee award of $350,000. Plaintiffs argue, however, that an award of $462,000, or 33% of the common fund, is more appropriate in this case. (Mem. in Supp. of Mot. for Final Approval of Class Action Settlement at 25.)

There are several factors that collectively indicate the reasonableness of the requested fee award. First, class counsel secured a favorable settlement for the class: each class member who did not opt out will receive an average of $450.14 without having to make a claim or submit documentation. (Id. at 21.) Second, class counsel litigated this matter on a

contingency basis (Desai Decl. ¶ 6) and, in doing so, assumed a significant risk that they would not be compensated for this work.  In the nearly two years since this case began in May 2017, plaintiff's counsel has invested a total of 553 attorney and paralegal hours in this case and have not yet received any payment for them.  (Desai Decl. ¶ 8.)  Third, in wage and hour class actions that result in a common fund of less than $10 million, "California district courts usually award attorneys' fees in the range of 30-40%." Miller v. CEVA Logistics USA, Inc., No. 2:13-CV-01321 TLN, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015). See, e.g., Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 492 (E.D. Cal. 2010) (holding that an attorney's fee award of approximately 33.3% of the total recovery was "fair and reasonable" in a wage and hour class action with a gross settlement payment of $300,000).  A fourth and final factor supporting the reasonableness of the requested fee award is the lack of objections from class members to the proposed award. (See Schwartz Decl. ¶ 14.)

Thus, in light of the result plaintiffs' counsel obtained for class members, the risks counsel incurred by taking this case on a contingency basis, the fees usually awarded in these types of cases, and the absence of objections to the requested fee award, the court finds that one third of the common fund is a reasonable award.  Accordingly, the court will allow the award of attorneys' fees in the amount of $462,000.

In its order granting preliminary approval of the proposed class settlement, the court expressed skepticism about class counsel's request for an award of $27,326.55 in costs.

(Order Re: Preliminary Approval of Class Settlement at 23.)  That figure included not only expenses associated with this matter, but also those associated with Shook v. Indian River Transport Co., No. 1:14-CV-1415 WBS BAM, and the court stated that "plaintiff has not convincingly shown that the class members in this case ought to pay for the loss in Shook."  (Order Re: Preliminary Approval of Class Settlement at 23.)  The Motion for Final Approval and for Attorney's Fees and Costs addresses this concern by requesting reimbursement for only those costs associated with this matter.  (Mot. for Final Approval at 24-25.) The court has reviewed the class counsel's costs workbook (Docket No. 67-7) and finds that the requested $10,000 costs' award to be reasonable.[3]  All of the requested expenses are for services that are routinely and properly reimbursed, i.e. transcription, mediation, and court filing costs.  Accordingly, the court will allow the award of costs in the amount of $10,000.

IT IS THEREFORE ORDERED that plaintiffs' motion for final approval of the class and class action settlement be, and the same hereby is, GRANTED.  IT IS FURTHER ORDERED THAT:

(1) solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class:

All persons who were employed by Indian River
Transport Co. as a truck driver at any time during the
period from April 7, 2013 through January 21, 2019,
and performed work for Indian River for at least one

---

[3]    The requested $10,000 is also slightly less than the $10,218.45 in costs class counsel expended on this matter.

1    full day in the State of California at any time.

2         (2) the court appoints the named plaintiffs Charles W.

3    Cooley, Grady Anderson, and Nicholas Marone as representatives of

4    the class and finds that they meet the requirements of Rule 23;

5         (3) the court appoints Desai Law Firm, P.C., as counsel

6    to the settlement class, and finds that counsel meets the

7    requirements of Rule 23;

8         (4) the Settlement Agreement's plan for class notice

9    is the best notice practicable under the circumstances and

10   satisfies the requirements of due process and Rule 23. The plan

11   is approved and adopted.  The notice to the class complies with

12   Rule 23(c)(2) and Rule 23(e) and is approved and adopted.

13        (5) having found that the parties and their counsel

14   took appropriate efforts to locate and inform all putative class

15   members of the settlement, and given that no class members filed

16   an objection to the settlement, the court finds and orders that

17   no additional notice to the class is necessary;

18        (6) as of the date of the entry of this order,

19   plaintiff and all class members who have not timely opted out of

20   this settlement herby do and shall be deemed to have fully,

21   finally, and forever released, settled, compromised,

22   relinquished, and discharged defendants of and from any and all

23   settled claims, pursuant to the release provisions stated in the

24   parties' Settlement Agreement;

25        (7) plaintiff's counsel is entitled to fees in the

26   amount of $462,000 and costs in the amount of $10,000.

27        (8) the named plaintiffs are each entitled to an

28   incentive payment of $10,000; and

(9) this action is dismissed with prejudice; however, without affecting the finality of this order, the court shall retain continuing jurisdiction over the interpretation, implementation, and enforcement of the settlement agreement with respect to all parties to this action and their counsel of record.

The Clerk is instructed to enter judgment accordingly.

Dated:  May 10, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE